## MUTUAL LUMBER COMPANY

### v.

### Clarence GERO et al., and First National Granite Bank of Augusta.

Supreme Judicial Court of Maine.

July 30, 1968.

Ralph M. Clark, Gardiner, George A. Wathen, Augusta, for plaintiff.

Richard B. Sanborn, Augusta, for defendant.

Before WEBBER, TAPLEY and MARDEN, JJ.

WEBBER, Justice.

Plaintiff supplied materials to one Gero to be used in the erection of a house. Gero, who with his wife was owner of this property, was also a general contractor engaged in work on other projects for which he purchased materials from plaintiff. Defendant Bank is the holder of two duly recorded construction loan mortgages on the property in question. Plaintiff claims a lien which was denied by the court below for reasons which will appear. Plaintiff appeals.

Mrs. Gero, one of the defendants here, was co-owner with her husband. The court found that "there was no evidence that she was a party to the contract or that she had any knowledge of the fact or the nature of the construction from which her consent could be inferred." There is no indication, however, that decision below rested on this ground. In any event, no issue with respect to her consent is tendered since by answer filed by the defendants jointly it is admitted that both defendants Gero contracted with plaintiff for the materials supplied.

Findings below that defendant Bank knew of and consented to the furnishing of materials for this building and that materials valued at $4631.10 ($4633.83 less $2.73 of non-lienable items) were actually incorporated in the building are adequately supported by the evidence.

The denial of lien appears to rest upon the method employed by plaintiff in accounting and upon the application of payments made by Gero to plaintiff.

The undisputed evidence discloses that in 1965 Gero entered into an agreement with one Whitney, general manager of plaintiff company, for the purchase of materials required to erect a house on Riverside Drive. Gero represented that he planned to have the house completed in about ninety days and would then finance his purchases by means of a loan with an unidentified bank. Prior to this time Gero had made purchas-

es from plaintiff for other jobs and while the Riverside job was in progress purchases continued to be made for other work in progress. Plaintiff carried on its books a single running account on which items were charged to Gero as purchased and added to the total sum then due. In addition, however, plaintiff employed a quadruple invoice system by the use of which plaintiff could determine what materials had been supplied for each job. Defendant Bank made advances to Gero from time to time pursuant to its mortgage agreement but made no effort to ascertain that Gero was applying these advances to the payment of bills attributable to the Riverside project. From time to time Gero made payments on account to plaintiff but without designating the source of funds or directing how credits should be applied. Plaintiff applied the credits against Gero's earliest purchases as shown on the running account with the result that the items furnished for the Riverside job remained unpaid.

The court below concluded that since plaintiff carried Gero's account on its books as an "open running account" and since no attempt was made by plaintiff to apply money which Gero received from the Bank to the payment of the bills for the Riverside house, plaintiff was barred from claiming a lien and estopped from establishing a lien priority ahead of the mortgage lien of the Bank.

In White Company v. Griffith, (1929) 127 Me. 516, 518, 519, 145 A. 134, 135, although the case turned primarily on the failure of plaintiff to show the owner's consent, the court said, "As the materials were not furnished under a contract with the owner, the plaintiff must show that they were furnished with the owner's consent. It must also appear that they were furnished for the construction, alteration or repair *of a particular building* and were not sold on an open account *for general use*." (Emphasis ours) The rule was restated and applied in Andrew v. Dubeau et

al, (1958) 154 Me. 254, 146 A.2d 761. The use of the phrase "open account" is not intended to mean that a material supplier is barred from claiming a lien merely because he maintains his principal book account in the form of a running account which covers all items sold to the contractor and which does not show a separate account for each of several jobs. The test is rather whether or not the supplier furnished the materials for a particular building and whether or not the supplier relied exclusively upon the credit of the purchaser. In *Griffith*, supra, the court indicated its understanding of how the rule should be applied when it said, "The sitting justice in the case at bar found that the materials furnished were sold on an open account and on the sole credit of the defendant Griffith and with no intent to rely on a lien on a building in which they might be used, which we construe to be a finding that they were sold *for general use*." (Emphasis ours) So also in *Andrew*, supra, the court applied the rule in these terms: "We direct our attention, therefore, to whether or not there was evidence of probative value and strength to support a finding that the materials sold by the plaintiff to the defendant, Dubeau, and for which a lien is claimed, were actually sold by the plaintiff with an understanding on his part that they were to be used for repairing the Stanton building, and whether or not any or all of the materials were so used; * * *." It is apparent that non-lienable sales "on open account" must be equated with sales "for general use" and upon the "sole credit" of the buyer.

In the recent case of Layrite Products Company v. Lux, (1966) 91 Idaho 110, 416 P.2d 501, 504, 505, 506, the court, applying the law to a case in which the supplier relied *exclusively* upon the credit of the contractor, said in part: "Statutes such as the Idaho provision which permit a lien *for materials furnished* usually apply only to furnishing for building purposes, and do not include a furnishing for general or unknown purposes, or an ordinary sale in the usual course of trade, or on a general open account, or a sale without any reference as to what shall be done with the materials sold. * * * The weight of authority however holds it is essential that the materials shall have been sold or furnished for the specific purpose of being used in the particular building on which the lien is claimed. Additionally, the materials must have been furnished on the credit of the building, and not merely on the general and personal credit of the owner, contractor or some other person. Where materials are furnished for use in a particular building, the fact that the materialman looks first or primarily to the contractor for payment and only subsequently to the building for security, would not of itself defeat the lien. * * * Whether materials sold must be furnished for use in a particular building and whether materials sold must have been in fact actually used in that building are entirely separate and distinct issues. * * * Thus the trial court was correct in concluding that appellant relied exclusively on the credit of (the contractor) and did not seek the additional security of the building for the materials furnished on credit." The law as thus stated by the Idaho court is fully applicable in Maine.

■ The findings below and the evidence never disputed make it abundantly clear that plaintiff did not sell the materials claimed as lienable "for general use" or "on the sole credit" of the contractor. The findings accurately reflect that plaintiff agreed with Gero to furnish materials "for the Riverside house he was planning to build." Thereafter, although the book account was maintained as a running account, the invoice system, integrated into and an operating part of plaintiff's method of account control, furnished a clear and identifying designation of all materials furnished for the Riverside job. As the findings state, " * * * the amounts purchased for each job were capable of computation by referring to these invoices." We note, however, that the findings state, "While the notation in the upper right cor-

ner of the invoices in most cases indicated the 'job' as being the Riverside Drive job, yet this notation was *primarily* for the benefit of the delivery men and no attempt was made by the plaintiff to segregate in its bookkeeping the Riverside Drive account." (Emphasis ours) We assume the use of the word "primarily" is intended not to exclude the fact that the notation also served as plaintiff's accounting device for designating the job to which the materials should be charged. The evidence is undisputed that whenever Gero picked up items for the Riverside job at plaintiff's place of business, this fact was elicited from him and a proper notation was made on the invoice—*even though no delivery at the site was involved in such instances*. There was no finding that these materials were furnished "for general use" or "exclusively upon the credit" of Gero, and indeed the evidence would not have supported such a finding if it had been made. The holding below appears to be that a supplier who is furnishing material to a contractor simultaneously for more than one project will lose an otherwise valid lien if he fails to maintain separate book accounts (apart from his invoice system) for each job. Such a requirement is more arduous than the law requires. Cook, Borden & Co. v. R. Z. L. Realty Corporation, (1929) 50 R.I. 375, 147 A. 891, 894; North. Va. Sav. & L. Ass'n. v. J. B. Kendall Co., (1964) 205 Va. 136, 135 S.E.2d 178, 184. The supplier must be able to offer satisfactory proof from whatever sources may be available that he furnished the materials for use in the particular building, relying in part upon the credit of the building and not wholly upon the credit of the contractor or other person, and that the materials were in fact used in the particular building on which a lien is claimed. Such was the proof in the instant case.

We turn now to the application of payments and the issue of estoppel vis-a-vis the defendant Bank. "The debtor has, in the first instance, the right to apply the payments in reduction of any claim whatsoever." Treadwell v. Moore, (1852) 34 Me. 112, 114. "But if he makes no appropriation, it will generally be in the power of the creditor to determine to what debt a payment shall be applied." Starrett v. Barber, (1841) 20 Me. 457, 461; Treadwell v. Moore, supra. "In the absence of such appropriation by either debtor or creditor, the law applies the credit to the extinguishment of the earliest items in the account." Lehigh Coal & Nav. Co. v. McLeod, (1916) 114 Me. 427, 431, 96 A. 736, 737; Cushing v. Wyman, (1857) 44 Me. 121, 137. And the same rules apply where some part but not all of an account may be secured by lien. Cushing v. Wyman, supra; North. Va. Sav. & L. Ass'n. v. J. B. Kendall Co., supra.

We recognize that a supplier may be bound by an intended appropriation of which he has knowledge even though the payment is not made directly to him by the debtor. The rule was well stated in Kendall at page 185 of 135 S.E.2d in this wise: "* * * that where money is paid by a contractor to a * * * materialman out of funds received by the contractor from an owner whose property is subject to a mechanic's lien, and the purpose of the payment to the contractor was to discharge the indebtedness against a specific house, the * * * materialman must apply the payment to discharge the indebtedness *if he had knowledge of the source and purpose of the payment.*" (Emphasis ours) Obviously the principle would apply equally where money was advanced by a bank to a contractor when the bank had a mortgage on a particular property and the materialman had notice that the bank was the source of specific payments received by him from the contractor and intended to pay bills incurred in connection with the mortgaged property.

In Bay Lumber Co. v. Eaton, (1932) 119 Cal.App. 362, 6 P.2d 289, 290, plaintiff materialman was supplying the contractor for several different jobs. In its recital of the facts the court said: "The record further

shows that the contractor, in receiving payment for his work, deposited all the payments to his credit in a general account at the bank with which he was doing business, and that from time to time he drew checks on this account in payment for materials furnished by the plaintiff. That there was never any designation by the contractor in making payments, as to what account the payment should be applied, nor does the record show that any information was ever given to the plaintiff as to the particular source from which any particular sum of money was received by * * * the contractor, when making payments to the plaintiff. * * * At the time of receiving payments, there being no direction from anyone as to how the payments should be applied, the plaintiff applied the several payments to the accounts which were earliest in maturity * * *. The fact that the plaintiff knew that there were different sources from which the contractor * * * might receive money is not equivalent to notice or knowledge that the contractor had received any particular payment from any particular source." The court approved the application of credits and sustained plaintiff's claim of lien.

■ If we but substitute the defendant Bank as the party making payments to the contractor in the instant case for the owner in Eaton, the facts are virtually identical. Here the plaintiff knew no more than that Gero intended to secure a construction loan from an unnamed bank. When plaintiff received payments from Gero, they came in the form of checks drawn on Gero's account without identification of the original source of funds or designation as to the desired appropriation of the payments. Plaintiff properly credited them against the earliest items on Gero's account. If defendant Bank had desired to protect itself, it could have notified plaintiff of its advances and its desire that credits be given on the Riverside account, or it could have insisted that Gero present receipts from plaintiff on the Riverside account before making advances. Or it could have given plaintiff the notice as provided by 10 M.R.S.A. Sec. 3252 and thus prevented plaintiff from claiming a lien position superior to that of the Bank. See Carey et al v. Boulette et al, (1962) 158 Me. 204, 182 A.2d 473. No doubt defendant Bank could have found other means of protecting its appropriation of its advances to the Riverside account if it had been vigilant. Plaintiff cannot be estopped by notice it never received or knowledge it never possessed.

We find no conflict between the facts as found below and the undisputed evidence contained in the record. When the legal principles above set forth are applied to this factual situation, the plaintiff becomes entitled to a paramount claim of lien on the Riverside property in the amount of $4631.10.

Appeal sustained. Remanded to the Superior Court for further proceedings not inconsistent with this opinion.

WILLIAMSON, C. J., and DUFRESNE and WEATHERBEE, JJ., did not sit.