UNIVERSITY OF ALASKA et al.,
Appellants,

v.

SIMPSON BUILDING SUPPLY COM-
PANY, Appellee.

No. 2196.

Supreme Court of Alaska.

Jan. 27, 1975.

Robert J. Dickson, Anchorage, for appellant.

Herbert Berkowitz, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER, and FITZGERALD, JJ.

## OPINION

RABINOWITZ, Chief Justice.

Simpson Building Supply Company (hereinafter Simpson Building) filed suit to establish a materialman's lien against certain property owned by the University of Alaska. This appeal arises from the superior court's entry of a summary judgment which validated Simpson Building's materialman's lien and ordered the lien foreclosed.

In May of 1970, the University of Alaska executed a commitment to lease a portion of its off-campus lands, known as the Yak Pasture, to a corporation to be established by the Atlantic Richfield Company. Thereafter, in contemplation of this commitment, an Alaska corporation called the University of Alaska Housing Corporation was established. In September 1970, the University of Alaska Housing Corporation

entered into a contract with Northwest Homes of Chehalis, Inc. (hereinafter Northwest), under the terms of which Northwest was to be paid $2,335,800 for constructing, transporting and erecting 96 modular townhouse units on the Yak Pasture site.

Northwest then commenced negotiations with Simpson Building in an attempt to interest Simpson Building in supplying precut dimensional lumber and specially manufactured siding for the Yak Estates project. It was agreed that Simpson Building would supply Northwest with the required materials, and, immediately upon receiving progress payments on the Yak Estates project, Northwest would pay Simpson Building 90 percent of Simpson's invoiced amounts.[1] Subsequently, Northwest encountered financial difficulties, and Simpson Building filed a timely claim of lien on the real property and improvements constituting the Yak Estates site. Simpson Building claimed that it had not received payment for $58,693.07 worth of building materials which it had shipped to Northwest for the Yak Estates project.

The University of Alaska, in its answer to Simpson Building's lien foreclosure complaint, asserted that Simpson Building had failed to state a claim for relief and counterclaimed for both compensatory and punitive damages for slander of title.[2] Thereafter, Simpson Building moved for summary judgment validating its lien claim and dismissing the slander of title counterclaim. The motion was based on certain depositions, admissions, answers to interrogatories, and an affidavit. In opposition, the University of Alaska filed a statement of genuine issues of fact, asserting that the following issues precluded summary judgment: (1) whether Simpson Building re-

1. Ten percent was to be retained until Northwest received final payment on the job.

2. The principal defendants in the foreclosure action were the University of Alaska (as owner of the property), University of Alaska Housing Corporation (as lessee under a recorded lease), Transamerica Title Insurance

Company (as trustee under a deed of trust affecting the property), and Baugh-Belarde Construction Company (also a lienor). These defendants were jointly represented in the superior court and adopted the same pleadings.

The University of Alaska's answer also contained four affirmative defenses which are not relevant to any of the issues in this appeal.

lied solely on the credit of Northwest; (2) whether the materials supplied to Northwest by Simpson Building were actually used in the Yak Estates project; and (3) the exact dollar amount of the obligations of Northwest to Simpson Building for materials furnished. No affidavits were offered by Northwest in support of its opposition to the motion, but in its memorandum in opposition to the summary judgment motion, reference was made to portions of two depositions which were relied upon by Simpson Building.

A hearing was then held before Judge Van Hoomissen. On the issue of whether Simpson Building relied solely on the credit of Northwest, Judge Van Hoomissen found ample evidence that Simpson Building had relied on the project buildings as security and that no showing had been made by the University of Alaska that Simpson Building had relied solely on the credit of Northwest. The superior court further found that the materials furnished by Simpson Building were actually incorporated into the Yak Estates project and that no factual issue was created by the University of Alaska's opposition. Judge Van Hoomissen then signed an order granting partial summary judgment. The remaining factual issue, namely, the precise amount of the lien, was disposed of by stipulation, with the amount being fixed at $56,126.81.

Simpson Building then submitted a proposed lien judgment, to which the University of Alaska objected on the grounds that the entry of any judgment should await completion of the trial of several consolidated lien foreclosure actions, and that the court had not yet decided whether the University of Alaska's real estate is subject to liens.[3] A hearing was then held before Judge Warren Taylor who entered a lien judgment in favor of Simpson Building. This judgment awarded Simpson a lien in the amount of $56,126.81, interest of $8,110.47, costs of $1,014.89, and attorney's fees of $4,934.32. The judgment described the Yak Estates site and ordered the lien foreclosed and as much of the property as necessary sold in order to satisfy the judgment.

In this appeal the University of Alaska contends that the superior court erred in ruling that no genuine issue of fact was presented regarding the questions of whether or not Simpson Building relied solely on the credit of Northwest, and whether the building materials furnished by Simpson Building were actually incorporated into the modular units which were erected on the Yak Pasture site. The University of Alaska also asserts that the superior court committed further errors when it found that no just reason for delay existed for entering final judgment and when it failed to hold that the Yak Estates, as property owned by University of Alaska, is immune from attachment or foreclosure of liens.

■ We now turn to the University of Alaska's specifications of error regarding the existence of genuine factual issues. The University of Alaska contends that if it is shown a materialman relied solely on the credit of his purchaser, he may not assert a lien against the building in which the materials are incorporated.[4] On the other hand, it is well established that if the materialman relies on both the credit of the purchaser and the security of the building, the materialman can assert a lien.[5]

3. Prior to the motion for summary judgment, the superior court had consolidated Simpson's lien foreclosure action with two similar separate actions.

The factual background of the University of Alaska's claimed immunity from lien defense will be treated subsequently.

4. Star Sprinkler Corp. of Florida v. Mead & Mount Constr. Co., 508 P.2d 801 (Colo.App. 1973).

5. Mutual Lumber Co. v. Gero, 244 A.2d 564 (Me.1968). In *Gero*, the court observed:
 The supplier must be able to offer satisfactory proof from whatever sources may be

As mentioned previously, the University of Alaska contends that summary judgment was improper because a genuine factual issue was raised as to whether in supplying materials Simpson Building relied solely on Northwest's credit. We disagree.

The record shows that Northwest furnished detailed written information to Simpson Building concerning the Yak Estates project in order to assure Simpson Building that there were sufficient monies in the base contract to pay for all of the work. Robert L. Staudenraus, credit supervisor of Simpson Building, averred that Northwest was in severe financial difficulty at the time negotiations were proceeding between Northwest and Simpson Building and that "Simpson therefore requested very specific information concerning the Yak Estates project." Representatives of Simpson Building were shown Northwest's detailed project cost breakdowns, a long-term lender's waiver of restrictive clauses in a note agreement with Northwest, a bank commitment to provide the Yak Estates interim construction loan in the amount of $2,000,000, and a shipper's certificate of special cargo insurance covering transportation of the modular units. Northwest also sent Simpson Building a letter from Dawson & Company (to which Northwest had applied for a surety bond) requesting Simpson Building to waive any claims against the surety bond on the Yak Estates project. Simpson Building refused to sign the waiver. Deliveries by Simpson Building to Northwest were made pursuant to Northwest's purchase orders which specified "Yak" or "Yak Estates" in the space provided for Project Name; this shows

that Simpson building was well aware of the project into which its materials were being incorporated and suggests that the deliveries were not made on open account.

 The only evidence offered by the University of Alaska to show Simpson Building's sole reliance on Northwest's credit is the following portion of Robert L. Staudenraus' deposition:

[University of Alaska's counsel]: I see. So you were looking to them [Northwest Homes] for the re—for the payment for these goods?

[Staudenraus]: Yes.

Civil Rule 56(c) provides in part that summary judgment

shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

Civil Rule 56(e) further provides that when a motion for summary judgment is properly supported in accordance with the rule,

an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Since no affidavits or depositions contained a sworn declaration that Simpson Building relied solely on the credit of Northwest, the superior court was correct in holding that no genuine issue of material fact had been raised.[6] Staudenraus did

available that he furnished the materials for use in the particular building, relying in part upon the credit of the building and not wholly upon the credit of the contractor or other person, and that the materials were in fact used in the particular building on which a lien is claimed.
244 A.2d at 568.
*See also* Layrite Products Co. v. Lux, 91 Idaho 110, 416 P.2d 501, 505 (1966), where the court said:
Where materials are furnished for use in a particular building, the fact that the ma-

terialman looks first or primarily to the contractor for payment and only subsequently to the building for security, would not of itself defeat the lien. (citations omitted)

6. Alaska Rent-A-Car, Inc. v. Ford Motor Co., 526 P.2d 1136 (Alaska 1974); Harris v. Alaska Title Guaranty Co., 510 P.2d 501 (Alaska 1973); Miller v. City of Fairbanks, 509 P.2d 826 (Alaska 1973); Nizinski v. Golden Valley Elec. Ass'n, Inc., 509 P.2d 280 (Alaska 1973); Braund, Inc. v. White, 486 P.2d 50 (Alaska 1971).

not state that Simpson Building was looking solely to Northwest for payment. Therefore, under the *Layrite Products* case,[7] Staudenraus' statement is consistent with the existence of Simpson Building's lien rights.

We reach a similar conclusion regarding the University of Alaska's contention that a genuine factual issue was presented as to whether the materials listed in Simpson's Building's invoices were actually incorporated into the Yak Estates project.

AS 34.35.050 provides in part that:

A person or firm . . . furnishing material for the construction . . . of a building . . . has a lien on it for the . . . material furnished at the instance of the owner of the building· . . . or his agent.

The University of Alaska's position is that in order to avail oneself of the lien provided for in AS 34.35.050, the materialman must demonstrate that the material furnished was actually incorporated into the building or project.[8] The University of Alaska contends that Simpson Building has failed to show that the materials listed on Simpson Building's invoices were actually incorporated into the Yak Estates project. The University points to the fact that John Barrier, its construction inspector, testified in his deposition that other modular units were being completed at Northwest's plant during the same period the Yak Estates units were being manufactured. In light of this testimony, the University of Alaska

suggests that some of the materials supplied by Simpson Building for the Yak Estates work may have been diverted to other projects.

Simpson Building argues that it has met its burden of proof by showing that its invoiced building supplies were used in Yak Estates. John Barrier was present in Northwest's fabrication and assembly plant for a portion of the time during which the Yak Estates units were being manufactured. In his deposition, Barrier authenticated nine photographs that he took while observing production of partially completed Yak Estates units. These photographs show component sections with the word "Simpson" stamped on the wooden base plates and partitions. In his deposition, George R. Osborne, Sr., president of Northwest, stated that "all of the material that Simpson furnished went into Yak estates."[9] Robert Staudenraus, Simpson Building's credit supervisor, stated in his affidavit that "Simpson subsequently agreed to deliver building supplies and did so against purchase orders which made specific reference to 'Yak' or which contained the FHA project number."[10]

We hold that the bare statement that other projects were being completed by Northwest at the same time that the Yak Estates modular units were being manufactured is insufficient, under this court's precedents, to raise a triable issue of fact.[11]

7. *See* note 5 *supra*.

8. Timber Structures, Inc. v. C. W. S. Grinding & Machine Works, 191 Or. 231, 229 P.2d 623 (1951) ; State ex rel. Trojan Powder Co. v. Johnson Contract Co., 120 Or. 633, 253 P. 520 (1927).

Simpson Building does not dispute this legal proposition.

9. In the course of his deposition, Osborne was asked whether at the time Northwest was manufacturing modular units for Yak Estates it was involved in any other activities. Mr. Osborne replied, "That was our total activity."

10. Simpson Building also relies on the University of Alaska's answer to requests for ad-

mission wherein the University admitted "that Simpson Building Supply Co. sold and delivered wood and wood products to Northwest . . . which wood and wood products were incorporated into structures which now comprise a part of Yak Estates."

11. *See* note 6 *supra*. In State ex rel. Trojan Powder Co. v. Johnson Contract Co., 120 Or. 633, 253 P. 520, 521 (1927), the court observed :

In the foreclosure of a materialman's lien it has been held that the materialman should not be required to watch the progress of a structure to see that every piece of material supplied by him was used therein, and that, if some of the material has been

Appellant University of Alaska has specified as further error the superior court's determination that "there [was] no just reason for delay" in entering the lien judgment. Civil Rule 54(b) provides where pertinent that:

When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

In Jefferson v. Spenard Builders' Supply, Inc., 366 P.2d 714, 715–716 (Alaska 1961), we said that the power to enter immediate judgment under Civil Rule 54(b)

is left to the discretion of the trial judge. This is sensible because he has first hand knowledge of the litigation, and is able to decide the best time at which to terminate it by final judgment as to one party and open the way to immediate review by way of appeal.

■ Our review of the record persuades us that since there were ample grounds for entering the lien judgment under Civil Rule 54(b), the University of Alaska has not shown that the superior court abused its discretion in the matter. While Judge Taylor did not articulate the basis for his determination that "there is no just reason for delay",[12] at the hearing which was held on the objections to the lien judgment, Simpson Building called the court's attention to the following considerations: that the action had become very complex owing to the presence of third-party defendants who are still completing discovery; that the issues between the other parties had no relevance to Simpson's Building's lien claim; that trial on the consolidated actions would not take place for over six months; and that it was to the advantage of the University of Alaska to prolong the litigation in order to defer paying Northwest the $56,126.81 which was stipulated as the amount owing to Simpson Building.

The University of Alaska's final specification of error is that the superior court's lien judgment was erroneous because the Yak Estates real property is immune from lien attachment or foreclosure. Although the question has not as yet been decided by this court, the weight of authority in other jurisdictions holds that there can be no mechanics' or materialmen's liens on property owned by the public and used for public purposes.[13] Alaska's mechanics' and materialmen's liens law, AS 34.35.050–120, is not, of its own terms, made applicable to public property. In addition, AS 09.35.-080(6) exempts from execution "all property of a public or municipal corporation". Simpson Building counters by arguing that the defense of immunity from liens was waived in the superior court and cannot now be urged on appeal.

Civil Rule 12(b) provides in pertinent part that:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required . . . .

used elsewhere, it rests with the defendant to show that fact.

12. We note that in applying Federal Rule of Civil Procedure 54(b), the court in Schwartz v. Compagnie Gen. Transatlantique, 405 F.2d 270, 275 (2d Cir. 1968), stated that district judges should "marshal the competing considerations and state the ones considered to be most important."

13. See, e. g., A. C. Chock, Ltd. v. Kaneshiro, 51 Haw. 87, 451 P.2d 809 (1969); Sunlight Elec. Supply Co. v. McKee, 226 Cal.App.2d 47, 37 Cal.Rptr. 782 (1964).

There appear to be at least two rationales for this rule. The first is based on sovereign immunity and essentially relies on the tenet of statutory construction that lien statutes do not apply to the state unless it is expressly so provided in the statute. The second reason is that it is against public policy to permit the sale of public property to satisfy liens, especially if other statutes exempt public property from execution under a judgment.

The University of Alaska's answer to Simpson Building's foreclosure complaint did not specifically assert the immunity from lien defense, but as was noted previously, the answer did alleged that the complaint failed to state a claim upon which relief can be granted. We think there is considerable merit in Simpson Building's contention that immunity is an affirmative defense which must be specifically pleaded.[14] For even though "immunity" is not specifically denominated in Civil Rule 8(c) as an affirmative defense, immunity from liens is "an avoidance" and thus can be characterized as an affirmative defense.[15] Adopting this view, the conclusion which follows is that the University of Alaska can be found to have waived the immunity from lien defense.[16]

■ Assuming, arguendo, that the defense of failure to state a claim for relief was sufficient to preserve the immunity issue, review of the record in the case at bar demonstrates that the University of Alaska, in the course of subsequent pleadings and discovery, failed to particularize its objections to Simpson Building's claim for relief. Illustrative of this failure is the fact that the University neglected to file a pre-trial memorandum which, under Alaska's Rules of Civil Procedure, is required to contain a "brief statement of what [the University] expects to prove as a defense."[17] The University also failed to file a motion to dismiss within the time period specified in Judge Van Hoomissen's pre-trial order. Furthermore, the University's memorandum in opposition to the summary judgment motion contains no mention of any lien immunity issue. The first time that the lien immunity issue was discussed was at the hearing on objections to the lien judgment, which was held over a year and ten months after the University of Alaska's answer had been filed.[18] We further note that at the hearing on objections to the lien judgment no memorandum of law was submitted by the University nor was any showing made that the University could factually bring itself within the immunity authorities it presented orally at the hearing.[19] Thus, we conclude on this record the superior court could have concluded that the University of Alaska waived or abandoned its purported lien immunity defense.[20]

---

14. Under Civil Rule 8(c), affirmative defenses, such as payment, release, and waiver, must be "set forth affirmatively" in a responsive pleading.

15. Civil Rule 8(c) reads in part:
 In pleading to a preceding pleading, a party shall set forth affirmatively . . . any other matter constituting an avoidance or affirmative defense.
 *Compare* Ackerman v. Physicians and Surgeons Hosp., 207 Or. 646, 298 P.2d 1026 (1956).

16. Civil Rule 12(h) provides, subject to certain exceptions:
 A party waives all defenses and objections which he does not present either by motion . . . or . . . in his answer or reply . . . .

17. *See* Civ.R. 16(c)(2).

18. The very first mention that Yak Estates might be immune from materialmen's liens occurred during the course of the hearing on the motion for summary judgment. At this hearing, Judge Van Hoomissen sua sponte asked whether this was a "little Miller Act" case involving "public construction at the University of Alaska." Shortly thereafter, counsel for appellant made the following remarks:
 [T]hey had some sort of sovereign immunity. I haven't researched that. I don't know whether they have or not. But I have raised that defense on behalf of the University of Alaska that you can't foreclose on land. I'm not sure that's true. It may well be true because it is a separate corporation. They're not subject, for example, to the little Miller Act. And they are subject to competitive bidding law, but whether they carry some form of sovereign immunity, I don't know.

19. Counsel for the University orally alluded to Oregon law, two A.L.R. annotations, and a New York precedent.

20. Although "abandonment" of an issue is a term generally reserved for failure to develop an issue adequately on appeal (*see* Wernberg v. Matanuska Elec. Ass'n, 494 P.2d 790 (Alaska 1972); Associated Engineers & Contractors, Inc. v. H & W Constr. Co., 438 P.2d 224 (Alaska 1968)), logically the same principle can be applied to issues before trial courts.

 Despite the foregoing, we are of the view that justice requires a remand of this matter to permit the parties to develop fully the requisite facts and law regarding the immunity from lien issue. We have reservations concerning the validity of the judgment because it calls for foreclosure of a lien on what may be public property, and we do not want to endorse a potentially null judgment.[21] But we have consistently held that an issue which was not raised in the trial court will not be treated on appeal.[22] This rule reflects the policy notion that the trial court should have an opportunity to develop a factual record and rule on an issue prior to presentation to the issue for appellate review. In the case at bar, the parties have not had the opportunity to present evidence going to the issues of whether the real property in question is publicly owned; whether such property is being used for a public purpose; whether the University of Alaska is a public corporation within the intendment of the exemption provided for by AS 09.35.-080(6); and whether the leasehold interest of the University of Alaska Housing Corporation in Yak Estates is lienable. In our view, these are issues of considerable significance which require an adequate factual record before resolution is attempted.

We therefore conclude that the rulings of the superior court should be affirmed but that the judgment should be stayed and the matter remanded to the superior court for such further proceedings as are deemed necessary in order to determine the lien immunity issue. Further, in light of appellant's failure to properly raise the lien immunity issue and our conclusion to remand the case to the superior court for determi-

nation of this issue, we consider it equitable that appellant be required to pay costs and Simpson Building's full attorney's fees relating to this appeal.[23]

Affirmed and remanded for further proceedings in accord with the foregoing.

---

21. Although void judgments may be set aside pursuant to an application under Civil Rule 60(b), appellate courts are disinclined to place their imprimatur on judgments that are possibly void. *See, e. g.,* High v. Southwestern Ins. Co., 520 P.2d 662 (Okla.1974); Prather v. Loyd, 86 Idaho 45, 382 P.2d 910 (Idaho 1963).

22. *See, e. g.,* Padgett v. Theus, 484 P.2d 697, 700 (Alaska 1971); Lumbermens Mut. Cas.

Co. v. Continental Cas. Co., 387 P.2d 104, 109 (Alaska 1963).

23. Costs relating to this appeal shall be determine] in accordance with Civil Rule 79. Simpson Building shall submit a detailed statement to the clerk of the supreme court pertaining to its attorney's fees relating to this appeal, and appellant shall have a reasonable time thereafter within which to submit opposition, if any, to the attorney's fees claimed.