**SEA HAWK SEAFOODS, INC., Appellant,**

v.

**STATE of Alaska, Appellee.**

No. S–13107.

Supreme Court of Alaska.

Sept. 11, 2009.

---

* Sitting pro tem by special order of the Chief Justice.

John G. Young, Young deNormandie, and Michael T. Schein and Kevin P. Sullivan, Sullivan & Thoreson, Seattle, Washington, for Appellant.

Mary Ellen Beardsley, Assistant Attorney General, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, and CARPENETI, Justices.

## OPINION

FABE, Chief Justice.

### I. INTRODUCTION

This appeal raises the question whether the State can waive its sovereign immunity through litigation conduct. After Sea Hawk Seafoods, Inc. obtained a final judgment against Valdez Fisheries Development Association, it alleged that Valdez Fisheries fraudulently conveyed millions of dollars to the State. The State litigated the case for almost ten years before it raised the defense of sovereign immunity. Although Sea Hawk maintained that the defense had been waived, the superior court dismissed Sea Hawk's fraudulent conveyance and conspiracy claims against the State, concluding that the State cannot waive its claim of sovereign immunity by failing to raise the issue in a

timely manner because only the Alaska Legislature can waive the State's immunity from suit. Because we conclude that the State can waive the affirmative defense of sovereign immunity through its litigation conduct and because the proper test for determining whether the State waived this defense has not been applied to the facts of this case, we reverse and remand for the superior court to apply the correct test for waiver.

## II. FACTS AND PROCEEDINGS

In July 1997 a jury awarded Sea Hawk Seafoods, Inc. just over $1.5 million against Valdez Fisheries. The superior court entered final judgment against Valdez Fisheries for more than $2.1 million in compensatory damages, costs, and attorney's fees in August 1997. Apparently the State was concerned that the jury verdict would jeopardize Valdez Fisheries' ability to make its loan payments to the State, and the State demanded in August 1997 that Valdez Fisheries pay approximately $7.7 million in principal, which it owed to the State. Two months later, the State approved a new loan to Valdez Fisheries for just over $1 million in operating expenses.

Sea Hawk filed a post-judgment "petition for avoidance of fraudulent conveyance" in October 1997, claiming that the loan transactions between the State and Valdez Fisheries constituted a fraudulent conveyance and seeking that the State return all of the money it had received from Valdez Fisheries. The State filed its answer to Sea Hawk's petition in October 1997. In addition to "reserv[ing] the right to assert additional defenses as they may become known," the State asserted that Sea Hawk failed to state a claim upon which relief can be granted and maintained that the State is not liable for punitive damages under AS 09.50.280. In

late October the State filed a motion to dismiss the petition under Alaska Civil Rule 12(c), which was converted by the trial court to a motion for summary judgment.[1]

Sea Hawk filed a cross-motion for summary judgment on its fraudulent conveyance petition in November 1997. Later that month Sea Hawk filed a motion to amend the petition to add the tort claim of conspiracy against the State for participating in the alleged fraudulent conveyance and it attached the proposed amended petition to its motion. The State and Valdez Fisheries opposed the motion. According to the State, the superior court never issued a ruling on Sea Hawk's motion to amend the petition.[2]

In March 1998 Valdez Fisheries filed for chapter 11 bankruptcy protection in federal bankruptcy court, resulting in a notice of automatic stay in the superior court. After the bankruptcy court approved the settlement agreement executed by Sea Hawk and Valdez Fisheries, it dismissed the bankruptcy proceedings in April 1999. That month Sea Hawk filed a motion in the superior court that renewed its requests for rulings on its claims against the State and sought about $1 million in damages to cover the shortfall that it had failed to obtain in its settlement with Valdez Fisheries. The superior court ruled in February 2000 that the bankruptcy court retained jurisdiction to interpret whether any of Sea Hawk's claims against the State were eliminated by its settlement with Valdez Fisheries, and the court directed the parties to submit the issue to the bankruptcy court. Following decisions by the bankruptcy court and the federal district court, the United States Court of Appeals for the Ninth Circuit ruled in February 2006 that the bankruptcy court lacked jurisdiction to interpret the settlement agreement.[3]

---

1. Although the State asserted that its motion was for judgment on the pleadings under Alaska Civil Rule 12(c), it supported its motion with documents on file with the trial court, attached an exhibit to its supporting memorandum, and acknowledged that the trial court might decide to treat its motion as a motion for summary judgment. *See* Alaska R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treat-

ed as one for summary judgment and disposed as provided in Rule 56....").

2. Sea Hawk maintains that its complaint has been amended "by implied consent" under Alaska Civil Rule 15.

3. *In re Valdez Fisheries Dev. Ass'n, Inc.*, 439 F.3d 545 (9th Cir.2006).

Sea Hawk filed a motion in May 2006, asking the superior court to reopen its case against Valdez Fisheries and the State as well as to rule on the pending cross-motions for summary judgment. The State opposed the motion, requesting that the superior court determine whether Sea Hawk's claims against the State were barred by the settlement agreement before it considered the pending motions. In October 2006 the superior court denied both summary judgment motions.

Sea Hawk and the State again filed cross-motions for summary judgment in 2007. In its opposition to Sea Hawk's summary judgment motion and reply to its own summary judgment motion, the State for the first time claimed that it was immune from Sea Hawk's suit. Sea Hawk moved to strike the State's sovereign immunity defense, contending that the State had waived this defense by failing to assert it as an affirmative defense in its answer. In October 2007 the superior court denied Sea Hawk's motion to strike the State's sovereign immunity defense and granted the State's motion for summary judgment on sovereign immunity grounds. The superior court reasoned that "only the legislature, by statute, can waive sovereign immunity" and found that "[t]here is no such statutory waiver here." The superior court remarked that "[i]f conduct can serve as an implied or constructive waiver, then the State has waived its sovereign immunity by failing to raise the issue after over ten years of litigation."[4] But the superior court went on to conclude that waiver of the sovereign immunity defense "cannot be implied by failing to raise the issue in a timely manner."

The superior court awarded the State twenty percent of its attorney's fees under Alaska Rule of Civil Procedure 82(a). Addressing the question whether the late asser-

tion of the sovereign immunity defense caused Sea Hawk to expend unnecessary attorney's fees, the superior court found "that the State did not act in bad faith or in a vexatious manner" and that "even if [a motion asserting the sovereign immunity defense] had been filed much earlier, it is doubtful that it would have been decided earlier, or that it would have impacted the many layers of litigation that followed." The superior court also denied Sea Hawk's request for attorney's fees, reasoning that Alaska Appellate Rule 508(e) was inapplicable and that use of its equitable powers to override Civil Rule 82 was not warranted.

Sea Hawk appeals the superior court's rulings on sovereign immunity and attorney's fees.

## III. STANDARD OF REVIEW

■ This appeal involves a grant of summary judgment and presents questions of law concerning waiver of sovereign immunity through litigation conduct. "We therefore apply a de novo standard of review, adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[5] We will affirm a grant of summary judgment "if the evidence in the record fails to disclose a genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[6]

## IV. DISCUSSION

■ The doctrine of sovereign immunity originates from "the ancient maxim that the king can do no wrong," and it has historically barred parties from bringing claims against the government.[7] But sovereign immunity has been criticized as "an anachronism, without rational basis, that has existed only by the force of inertia."[8] As the doctrine

---

**4.** Sea Hawk added the State to its lawsuit against Valdez Fisheries on October 3, 1997, and the State for the first time claimed sovereign immunity on July 20, 2007, about nine years and ten months after the State was added.

**5.** *State Farm Mut. Auto. Ins. Co. v. Dowdy,* 192 P.3d 994, 998 (Alaska 2008) (internal quotation marks omitted).

**6.** *Ware v. Ware,* 161 P.3d 1188, 1192 (Alaska 2007) (internal quotation marks omitted).

**7.** *State v. Zia, Inc.,* 556 P.2d 1257, 1260 (Alaska 1976).

**8.** *State v. Abbott,* 498 P.2d 712, 717 (Alaska 1972) (alteration and internal quotation marks omitted).

evolved in the United States, individual states began consenting to be sued under certain conditions.[9] The State of Alaska consents to suits against it in article II, section 21 of the Alaska Constitution: "The legislature shall establish procedures for suits against the State." Presently, the general rule in Alaska is that the government is liable for its wrongs.[10]

Pursuant to article II, section 21 of the Alaska Constitution, AS 09.50.250 establishes that "contract, quasi-contract, or tort claim[s]" may be brought against the State, but it places some limitations on the State's liability for these claims. Among the exceptions to the general rule of liability are claims "aris[ing] out of ... misrepresentation, deceit, or interference with contract rights."[11] The applicability of this exception to liability in this case is not disputed. Instead, Sea

Hawk argues that the State waived its claim of sovereign immunity by raising the defense after almost ten years of litigation.

As the parties recognize, the first question raised in this appeal is whether a waiver of sovereign immunity is a jurisdictional requirement. In other words, does the defense of sovereign immunity affect a court's authority to hear the case? Although some courts have held that a state's sovereign immunity relates to a court's jurisdiction over the subject matter of the case and therefore the government can raise its immunity at any time,[12] most courts do not take this approach.[13] For example, the Supreme Court of South Carolina "overrule[d] the antiquated rule that sovereign immunity is a jurisdictional bar and, accordingly, cannot be waived" to "join those jurisdictions which hold that sovereign immunity is an affirma-

---

9. *Zia,* 556 P.2d at 1260.

10. *See Kinegak v. State, Dep't of Corr.,* 129 P.3d 887, 889 (Alaska 2006) ("[L]iability is the rule, immunity the exception in claims against the state." (internal quotation marks omitted)); *Adams v. State,* 555 P.2d 235, 244 (Alaska 1976) ("The law of sovereign immunity has evolved from the early common law that the King can do no wrong through a stage where ... the King can do only little wrongs to its present posture, where liability is the rule, immunity the exception." (footnote, alteration, and internal quotation marks omitted)).

11. AS 09.50.250(3).

12. *See, e.g., Kirk v. Kennedy,* 231 So.2d 246, 248 (Fla.Dist.App.1970) (holding that because "the defense of sovereign immunity relates solely to the jurisdiction of the court over the subject matter of the cause," a defendant may move to dismiss a complaint on the ground of sovereign immunity at any time under the Florida civil procedure rules); *Henderson v. Dep't of Corr. Servs.,* 256 Neb. 314, 589 N.W.2d 520, 522 (1999) (holding that "[a]bsent legislative action waiving sovereign immunity, a trial court lacks subject matter jurisdiction over an action against the state" and that "[l]itigants cannot confer subject matter jurisdiction on a judicial tribunal by either acquiescence or consent and the state's immunity from suit cannot be waived by a voluntary general appearance by the Attorney General"); *see also* 57 Am.Jur.2d *Municipal, County, School, and State Tort Liability* § 605 (2001) (citing decisions holding that a state's sovereign immunity can be raised at any time because the defense goes to a court's subject-matter jurisdiction).

13. *See, e.g., Gauvin v. City of New Haven,* 187 Conn. 180, 445 A.2d 1, 3 (1982) ("Governmental immunity is essentially a defense of confession and avoidance similar to other defenses required to be affirmatively pleaded."); *Cross v. City of Kansas City,* 230 Kan. 545, 638 P.2d 933, 937 (1982) (holding that governmental immunity has "[t]raditionally ... been raised as a failure to state a claim upon which relief can be granted[ ] or failure to state facts sufficient to constitute a cause of action" (citation and internal quotation marks omitted)); *Hern v. Crist,* 105 N.M. 645, 735 P.2d 1151, 1154 (N.M.App.1987) (ruling that "it [is] preferable practice for the immunity defense to be specifically raised as an affirmative defense or by way of a motion to dismiss"). *Cf. Wendelken v. JENK LLC,* 291 Ga.App. 30, 661 S.E.2d 152, 155 (2008) (applying the rule that the party seeking to benefit from a waiver of sovereign immunity must establish that the government's sovereign immunity has been waived because immunity from suit is a privilege and not an affirmative defense); *Drake v. Smith,* 390 A.2d 541, 543 (Me.1978) (declining to address whether jurisdictional grounds were the basis of its holding that "in the absence of specific authority conferred by [a legislative enactment], the sovereign's immunity from suit cannot be waived through the imposition of procedural requirements or be deemed forfeited by procedural defaults"). For examples of decisions by other states that treat sovereign immunity as an affirmative defense, see *infra* notes 14–20. *See also* 57 Am.Jur.2d *Municipal, County, School, and State Tort Liability* § 621 (listing decisions holding that sovereign immunity is an affirmative defense that is waived if not affirmatively pleaded).

tive defense that must be [pleaded]." [14] New Jersey [15] and Utah [16] are among the states that have concluded that sovereign immunity is an affirmative defense, and sovereign immunity is an affirmative defense by statute in other states, including Michigan,[17] Pennsylvania,[18] and South Dakota.[19] And even some courts have treated sovereign immunity as an affirmative defense in decisions that have not directly addressed whether sovereign immunity relates to the court's jurisdiction over the subject matter of the case.[20]

We have recognized that a court has subject-matter jurisdiction over a case when it has "'the legal authority ... to hear and decide [that] particular type of case.'"[21] Under article IV, section 1 of the Alaska Constitution, "[t]he jurisdiction of courts shall be prescribed by law." Accordingly, AS 22.10.020(a) provides that the superior court has "jurisdiction in all civil and criminal matters." In recognition of this provision, the State does not deny that the superior court had the legal authority to hear the civil claims brought by Sea Hawk against private parties such as Valdez Fisheries.

Instead, the State contends that AS 09.50.250 limits the superior court's authority to hear Sea Hawk's claims to the extent that they are asserted against the State. Yet the language of AS 09.50.250 indicates that the State's consent to be liable for certain activities is independent of a court's authority to hear such claims for recovery. Alaska Statute 09.50.250 provides that all civil claims [22] may be brought against the State in a state court *if* the court has subject-matter jurisdiction: "A person or corporation having a contract, quasi-contract, or tort claim against the state may bring an action against the state in a state court that has jurisdiction over the claim." This statute was enacted pursuant to article II, section 21 of the Alaska Constitution,[23] which authorizes the Alaska Legislature to prescribe the terms and conditions under which the State consents to be sued, and not under the constitutional provision that authorizes the legislature to establish the courts' jurisdiction.[24] Thus, the language of AS 09.50.250 does not suggest that the statute serves as a limitation on a state court's authority to hear particular types of cases.[25]

**14.** *Washington v. Whitaker,* 317 S.C. 108, 451 S.E.2d 894, 898 (1994).

**15.** *Kolitch v. Lindedahl,* 100 N.J. 485, 497 A.2d 183, 189 (1985) ("It is well established that the burden is on the public entity both to plead and prove its immunity under our Act....").

**16.** *Ferree v. State,* 784 P.2d 149, 152–53 (Utah 1989) ("Sovereign immunity ... is an affirmative defense....").

**17.** *See* Mich. Civ. R. 2.111(F)(3)(a).

**18.** *See* Pa. R. Civ. P. 1030(a).

**19.** *See* S.D. Codified Laws § 21–32A–3 (1987).

**20.** *See Sierra v. Assoc. Marine Insts., Inc.,* 850 So.2d 582, 590 (Fla.Dist.App.2003) (noting "sovereign immunity generally is an affirmative defense that may justify granting a motion to dismiss only when the complaint itself conclusively establishes its applicability" in addressing the lower court's holdings that the defendants were immune from the alleged intentional torts and that the second amended complaint alleged conduct that constituted planning-level activity for which sovereign immunity was not waived), *superseded by statute on other grounds,* 2003 Fla. Sess. Law Serv. ch.2003–412, § 14, *as recognized in Cabrera v. T.J. Pavement Corp.,* 2 So.3d 996, 999 n. 4 (Fla.Dist.App.2008); *Goad v. Cuyahoga*

*County Bd. of Comm'rs,* 79 Ohio App.3d 521, 607 N.E.2d 878, 879–80 (1992) (explaining that pleading the affirmative defense of failure to state claim upon which relief can be granted is sufficient to raise "the affirmative defense of sovereign immunity" as long as "the complaint itself bore conclusive evidence that the action was barred by sovereign immunity").

**21.** *Nw. Med. Imaging, Inc. v. State, Dep't of Revenue,* 151 P.3d 434, 438 (Alaska 2006) (quoting Erwin Chemerinsky, Federal Jurisdiction 257 (3d ed.1999)).

**22.** *See Wright Truck & Tractor Serv., Inc. v. State,* 398 P.2d 216, 220 (Alaska 1965) (holding that AS 09.50.250 includes all civil claims), *superseded by statute on other grounds,* ch. 30, § 2, SLA 1965, *as recognized in State v. Phillips,* 470 P.2d 266, 272 (Alaska 1970).

**23.** *See State v. Haley,* 687 P.2d 305, 318 (Alaska 1984) ("By enacting section 250, the legislature has exercised its authority, pursuant to Alaska Const. art. II, § 21, to waive the State's immunity to suits asserting contract claims against it.").

**24.** Alaska Const. art. IV, § 1.

**25.** In *State v. Zia, Inc.,* 556 P.2d 1257, 1263 (Alaska 1976), where we held that AS 09.50.250

■ Moreover, our prior treatment of the defense of sovereign immunity confirms that it is a defense that does not affect a court's subject-matter jurisdiction. Many courts have concluded that sovereign immunity is an affirmative defense that must be pleaded to avoid waiver.[26] This conclusion is implicit in our decision in *University of Alaska v. Simpson Building Supply*.[27] There, the University of Alaska first asserted that sovereign immunity could bar a materialman's lien against its property at a hearing on a summary judgment motion that was held almost two years after the university had filed its answer.[28] On appeal the university argued that the superior court's lien judgment was erroneous because its property was immune from lien attachment.[29] We noted that "there is considerable merit in Simpson Building's contention that immunity is an affirmative defense which must be specifically pleaded" because "even though 'immunity' is not specifically denominated in Civil Rule 8(c) as an affirmative defense, immunity from liens is 'an avoidance' and thus can be char-

acterized as an affirmative defense."[30] Despite this, we remanded the matter to develop the facts and law on whether the property was immune from liens because of our reservations about endorsing a potentially null judgment.[31]

■ We clarify now what we implied in *Simpson*: the State's claim of sovereign immunity is properly characterized as an affirmative defense because it is "an avoidance" under Civil Rule 8(c). This rule requires that a litigant set forth certain specific defenses as well as "any other matter constituting an avoidance or affirmative defense." We have explained that an avoidance is a matter that "avoids the action" and that "the plaintiff does not have to prove at the outset in support of the action."[32] Sovereign immunity satisfies this definition because it bars a person from bringing a claim against the State[33] and plaintiffs are not required to show that they may sue the State in order to proceed with their claims.[34]

---

establishes an administrative procedure that is a condition precedent to recovery against the State, we noted that we did "not find AS 09.50.250 to be of the jurisdictional nature, but rather" was "founded on a policy whereby a court refrains from exercising its existing jurisdiction."

26. *See, e.g., Kolitch v. Lindedahl*, 100 N.J. 485, 497 A.2d 183, 189 (1985) ("It is well established that the burden is on the public entity both to plead and prove its immunity under our Act...."); *Washington v. Whitaker*, 317 S.C. 108, 451 S.E.2d 894, 898 (1994) ("[W]e overrule the antiquated rule that sovereign immunity is a jurisdictional bar and, accordingly, cannot be waived. We join those jurisdictions which hold that sovereign immunity is an affirmative defense that must be pled." (citations omitted)); *Ferree v. State*, 784 P.2d 149, 152–53 (Utah 1989) ("Sovereign immunity ... is an affirmative defense and conceptually arises subsequent to the question of whether there is tort liability in the first instance."); *see also* 57 Am.Jur.2d *Municipal, County, School, and State Tort Liability* § 621 (2001) (listing decisions holding that sovereign immunity is an affirmative defense that is waived if not affirmatively pleaded).

27. 530 P.2d 1317 (Alaska 1975).

28. *Id.* at 1323.

29. *Id.* at 1322.

30. *Id.* at 1323. Similarly, in *State, Commercial Fisheries Entry Commission v. Carlson (Carlson III )*, 65 P.3d 851, 873 (Alaska 2003), we rejected the State's argument that had "sovereign immunity overtones," reasoning that "[t]he State's failure to raise its immunity argument before the superior court and before this court at the time this issue was being litigated precludes the State from raising this defense now."

31. *Simpson*, 530 P.2d at 1324.

32. *Rollins v. Leibold*, 512 P.2d 937, 941 (Alaska 1973) (citing 2A J. Moore, Federal Practice ¶ 8.27(3) (2d ed.1972); 5 C. Wright & A. Miller, Federal Practice & Procedure § 1271 (1969)).

33. *See* AS 09.50.250 (listing limitations to the State's consent to be sued). *See generally State v. Zia, Inc.*, 556 P.2d 1257, 1260 (Alaska 1976) (explaining that historically the doctrine of sovereign immunity "operated as a bar to claims brought against the state" but that "states began to permit suits against themselves as long as they were brought in a manner and in the courts prescribed by law").

34. *See* AS 09.50.250 (waiving the State's immunity from contract, quasi-contract, and tort suits without requiring plaintiffs to prove waiver before suing the State); *see also, e.g., Carlson III*, 65 P.3d at 873–74 (rejecting the State's argument that it was immune from class actions for fee refunds because the argument was waived and outside the scope of the remand without re-

■ Our determination that sovereign immunity is an affirmative defense leads us to the question whether it must be pleaded to avoid waiver. Alaska Civil Rule 8(c) provides that "a party shall set forth" affirmative defenses "[i]n pleading to a preceding pleading." This requirement aims to give litigants sufficient notice of their opponent's defenses to adequately prepare for trial.[35] But failing to plead an affirmative defense does not necessarily result in waiver of the defense because "Alaska follows the widely-used approach which, if undue prejudice would not be visited upon the opposing party, allows a litigant to raise new affirmative defenses 'at any time' through a motion for summary judgment."[36] This approach stems from the policy that decisions should be based on the merits rather than on pleading technicalities[37] and from Civil Rule 15's intention that requests for leave to amend pleadings be liberally granted.[38] Thus, we agree with the courts that have concluded that whether the government waived its sovereign immunity by failing to affirmatively plead the defense in the answer turns on "whether the adverse party is prejudiced by the moving party's delay in raising the defense."[39]

■ We have previously determined that "[w]hether a litigant is unduly prejudiced by an opponent's post-answer attempt to obtain summary judgment on the basis of an affirmative defense not set forth in the pleadings is an inquiry invoking virtually the same concerns as a motion to amend the pleadings with leave of court."[40] Accordingly, we have applied the same factors to determine whether a party would be prejudiced if the opposing party were permitted to raise a new affirmative defense at the summary judgment stage as to decide whether a party would be prejudiced if the opposing party were permitted to amend its pleadings.[41] These factors include "added expense and delay, a longer or more burdensome trial, or if the issues being raised in the amendment are remote from the scope of the original case."[42] A finding of prejudice, however, is not necessarily fatal. Before resolving whether the State has waived its sovereign

---

quiring the class members to have shown that the State had waived its immunity before proceeding with the suit); *Simpson*, 530 P.2d at 1324 (remanding the immunity issue to develop the requisite facts and law regarding whether the university's property was immune from liens without imposing a requirement that the plaintiff show that the State had waived its immunity in order to proceed with the suit).

**35.** *Gamble v. Northstore P'ship*, 907 P.2d 477, 481 (Alaska 1995).

**36.** *Id.* at 483 (quoting *Blake v. Gilbert*, 702 P.2d 631, 639 (Alaska 1985), *overruled on other grounds by Bibo v. Jeffrey's Rest.*, 770 P.2d 290, 296 n. 9 (Alaska 1989)).

**37.** *Id.*

**38.** *Id.; see also* Alaska R. Civ. P. 15(a) (providing that leave to amend a pleading "shall be freely given when justice so requires").

**39.** *Pickle v. Bd. of County Comm'rs of County of Platte*, 764 P.2d 262, 264 (Wyo.1988); *accord Morris v. City of Chicago*, 130 Ill.App.3d 740, 86 Ill.Dec. 77, 474 N.E.2d 1274, 1278–79 (1985).

**40.** *Gamble*, 907 P.2d at 484. We reasoned that a motion to amend the pleadings with leave of court in combination with a standard summary judgment motion is "functionally equivalent" to

a summary judgment motion that raises a new affirmative defense. *Id.* at 484 n. 4. Similarly, a motion to amend the pleadings with leave of court in combination with a standard response to a summary judgment motion is "functionally equivalent" to a response to a summary judgment motion that raises a new affirmative defense.

**41.** *See, e.g., id.* at 484; *Rutledge v. Alyeska Pipeline Serv. Co.*, 727 P.2d 1050, 1054–55 (Alaska 1986).

**42.** *O'Callaghan v. Rue*, 996 P.2d 88, 101 (Alaska 2000) (internal quotation marks omitted). Another possible factor that may be relevant to the trial court's prejudice determination is the plaintiff's ability to amend the complaint to name state officials in their individual capacities. *See generally State, Dep't of Health & Social Servs., Div. of Family & Youth Servs. v. Native Village of Curyung*, 151 P.3d 388, 404 (Alaska 2006) (explaining that even if the government is immune from suit, the plaintiff may seek to enjoin the actions of state officials or to obtain a declaratory judgment that the state officials' actions violate federal statutory or constitutional rights and noting that "as a practical matter, either remedy ... is functionally the same as an injunction prohibiting the state itself from doing those acts").

immunity defense through litigation conduct, the trial court must consider whether additional time or money can remedy the prejudicial effect of the State's late assertion of the defense.[43]

In the present case, the trial court remarked that "[i]f conduct can serve as an implied or constructive waiver, then the State has waived its sovereign immunity by failing to raise the issue after over ten years of litigation." But the trial court did not provide any explanation for this conclusion nor did it determine whether Sea Hawk had been prejudiced. Moreover, the court's comments regarding its award of attorney's fees to the State appear to cut against its waiver conclusion. In addressing whether the late assertion of the sovereign immunity defense caused Sea Hawk to expend unnecessary attorney's fees, the trial court remarked that because the case had been delayed by bankruptcy proceedings and several appeals, "even if [a motion asserting the sovereign immunity defense] had been filed much earlier, it is doubtful that it would have been decided earlier, or that it would have impacted the many layers of litigation that followed." The trial court also noted that "[i]t appears that in the intervening years there were concerns as to whether this court had jurisdiction to deal with issues including the

sovereign immunity claim." Thus, we remand so that the trial court may apply the proper waiver analysis to determine whether the State waived its sovereign immunity defense.[44]

## V. CONCLUSION

 The State can waive its claim of sovereign immunity by failing to raise the affirmative defense in a timely manner. Whether the State waived the defense turns on whether the plaintiff is prejudiced by the State's late assertion of the defense. To make a determination on the prejudice issue, a court must consider factors including added expense and delay, a longer or more burdensome trial, and if the issues being raised in the amendment are remote from the scope of the original case, as well as whether additional time or money can remedy the prejudicial effect of the State's delay in raising the defense. If the trial court determines that the State waived its claim of sovereign immunity, the court will need to rule on Sea Hawk's outstanding motion to amend its petition to include the conspiracy claim. Because it was error to conclude that the State cannot waive its sovereign immunity defense through litigation conduct and to fail to apply the correct test for determining waiver of the State's sovereign immunity, we REVERSE

---

43. *Cf. DeNardo v. ABC Inc. RVs Motorhomes,* 51 P.3d 919, 926–27 (Alaska 2002) (explaining that before a trial court dismisses an action under Civil Rule 37, the court must consider alternative remedies to cure the prejudicial effect of the discovery violations and to deter further violations, such as monetary sanctions); *Gamble,* 907 P.2d at 484 ("[T]he remedy for inadequate time to prepare on a new theory is a continuance, not preventing a trial on the merits of the new theory." (internal quotation marks omitted)); *Zeller v. Poor,* 577 P.2d 695, 697–98 (Alaska 1978) (noting that the inconvenience and additional legal fees associated with a litigant's delay may be remedied by assessing costs and attorney's fees in a discussion of dismissals for want of prosecution under Civil Rule 41(e)).

44. As alternative grounds for reversing the trial court's dismissal of its claims, Sea Hawk argues that the State's sovereign immunity defense was not properly before the trial court because the State first raised its claim of sovereign immunity in a reply memorandum for its summary judg-

ment motion. The trial court appropriately considered and addressed the parties' arguments concerning whether the State's claim of sovereign immunity had been waived, as we do here. Because we decide this case on the merits and instruct the trial court on remand to determine whether the State's sovereign immunity defense has been waived, we need not address Sea Hawk's procedural argument. *See Hughes v. Bobich,* 875 P.2d 749, 756 n. 11 (Alaska 1994) ("Our reversal of the trial court's decision on these grounds makes it unnecessary for us to decide the various alternative grounds advanced by the [plaintiffs] in challenging the trial court's orders of dismissal and summary judgment."). Finally, our disposition moots Sea Hawk's argument that the superior court abused its discretion in awarding the State attorney's fees. *See Cikan v. ARCO Alaska, Inc.,* 125 P.3d 335, 342 n. 22 (Alaska 2005) ("Our reversal of the summary judgment order necessarily vacates the superior court's award of attorney's fees to ARCO, making Cikan's separate challenge to the fee award moot.").

and REMAND for further proceedings consistent with this opinion.

MATTHEWS and WINFREE, Justices, not participating.