Michael McCRARY, Appellant,

v.

IVANOF BAY VILLAGE and Edgar Shangin, Appellees.

No. S-13972.

Supreme Court of Alaska.

Dec. 9, 2011.

---

Donald Craig Mitchell, Anchorage, for Appellant.

Heather Kendall Miller, Natalie A. Landreth, and Erin C. Dougherty, Native American Rights Fund, and Lloyd B. Miller, Sonosky, Chambers, Sachse, Miller & Munson, LLP, Anchorage, for Appellees.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

### *OPINION*

WINFREE, Justice.

## I. INTRODUCTION

Michael McCrary sued Ivanof Bay Village (Ivanof Bay) and its president, Edgar Shangin, under two contracts, alleging breaches of the implied covenants of good faith and fair dealing. The superior court dismissed the suit based on sovereign immunity. McCrary appeals the sovereign immunity ruling, arguing that even though the United States Department of Interior lists Ivanof Bay as a federally recognized Indian tribe, Ivanof Bay has not been formally designated as a federally recognized tribe. We have previously concluded Alaska Native tribes recognized by Congress or the Executive Branch are sovereign under federal law, and McCrary has not demonstrated this conclusion should be overturned. We therefore affirm the superior court's dismissal of McCrary's suit.

## II. FACTS AND PROCEEDINGS

The United States Department of Interior (Department) annually publishes a list of federally recognized Indian tribes.[1] Ivanof Bay[2] has been a recognized tribe on the Department's list since the Department issued a "preliminary" list of Alaska Native tribes in 1982.[3]

In September 2005 McCrary contracted with Ivanof Bay to oversee its land by performing certain duties, such as securing buildings, in exchange for payment of $1,500 monthly.[4] In December 2005 McCrary and Ivanof Bay cancelled that contract, but Ivanof Bay agreed McCrary could "store his personal belongings in the tribal building."

In June 2006 McCrary and Ivanof Bay formed a new contract for McCrary to "provide sustainable economic development to the Ivanof Bay Village tribal members." Ivanof Bay agreed to pay McCrary a monthly fee for being "the lead agent in the economic development planning, developing, and management effort." McCrary incurred expenses and assumed contractual obligations exceeding $100,000, of which Shangin had personal knowledge. In September 2006

1. *See* 25 U.S.C. § 479a–1 (2006) (directing Secretary of Interior to publish annual list of recognized tribes). In this opinion, we refer to the "Department's list," even though Congress delegated this authority to the Secretary of Interior. *Id.*

2. We use Ivanof Bay's preferred spelling even though it appears as "Ivanoff Bay Village" on the Department's list.

3. Indian Tribal Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 47 Fed. Reg. 53,130, 53,-131, 53,133–35 (Nov. 24, 1982); *e.g.,* Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 74 Fed. Reg. 40,218, 40,222 (Aug. 11, 2009).

4. For the purposes of this appeal, we consider the facts alleged in the complaint as true. *Fuhs v. Gilbertson,* 186 P.3d 551, 554 (Alaska 2008) ("deeming all facts in the complaint true and provable" when reviewing motion to dismiss).

Shangin cancelled the June contract on Ivanof Bay's behalf without reimbursing McCrary's expenses. McCrary attempted to retrieve his personal property from the tribal building, but Ivanof Bay denied him access.

In October 2008 McCrary sued Ivanof Bay and Shangin in state superior court, alleging breaches of the implied covenants of good faith and fair dealing in the 2005 and 2006 contracts.[5] In November McCrary dismissed the case without prejudice and filed a new suit against Ivanof Bay (but not Shangin) and the Department in federal district court. McCrary later amended his complaint to include as defendants the Acting Assistant Secretary of Interior for Indian Affairs and the Secretary of Interior. McCrary sought "a declaratory judgment that neither Congress nor the Secretary of the Interior nor any other official of [the Department] ... has recognized the members of [Ivanof Bay] to be a 'federally recognized tribe,' and, as a consequence, [Ivanof Bay] does not possess sovereign immunity."

In September 2009 the federal district court dismissed McCrary's complaint for lack of subject matter jurisdiction because the complaint did not raise a federal question. The next day McCrary again sued Ivanof Bay and Shangin in superior court, making the same claims as his previous superior court suit.[6] In January 2010 Ivanof Bay and Shangin moved to dismiss McCrary's suit, arguing in part that the superior court lacked subject matter jurisdiction because "Ivanof Bay is a federally recognized [t]ribe protected by sovereign immunity." Ivanof Bay and Shangin relied on our conclusion in *John v. Baker* that Alaska Native tribes on the Department's list of federally recognized tribes are sovereign entities entitled to sovereign immunity.[7] McCrary opposed the motion, arguing the list had no effect because Ivanof Bay has not been formally designated as a federally recognized tribe.

In June 2010 the superior court dismissed McCrary's suit for lack of subject matter jurisdiction because Ivanof Bay and Shangin were "protected by sovereign immunity." McCrary appeals.[8]

### III. STANDARD OF REVIEW

"The applicability of sovereign immunity presents a question of law that we review de novo."[9] We adopt "the rule that is most persuasive in light of precedent, reason, and policy."[10]

### IV. DISCUSSION

McCrary contends the superior court's implicit determination that Ivanof Bay is a federally recognized tribe was the basis for its ruling that Ivanof Bay and Shangin are immune from suit in state court. McCrary argues the superior court erred by dismissing his complaint because Congress has neither recognized Ivanof Bay as an Indian tribe nor delegated authority to the Department to do so. He concludes that Ivanof Bay and Shangin are not entitled to sovereign immunity because Ivanof Bay is not a validly recognized tribe.

McCrary asks us to overrule our September 1999 *John v. Baker* decision, which concluded that Alaska Native tribes recognized by Congress or the Executive Branch are sovereign under federal law.[11] McCrary asserts that the parties in *John v. Baker* did not adversarially brief the tribal recognition

---

**5.** The suit named Shangin in his capacity as Ivanof Bay's president.

**6.** The complaint is ambiguous, but because McCrary does not argue on appeal that he brought claims against Shangin in any capacity other than as president of Ivanof Bay, we assume he did not.

**7.** 982 P.2d 738, 748–50 (Alaska 1999).

**8.** The State of Alaska declined our invitation to participate as amicus curiae.

**9.** *State v. Alaska State Emps. Ass'n, AFSCME, AFL–CIO*, 190 P.3d 720, 722 (Alaska 2008) (cit-

ing *Runyon ex rel. B.R. v. Assoc. of Vill. Council Presidents*, 84 P.3d 437, 439 (Alaska 2004)).

**10.** *Runyon*, 84 P.3d at 439 (citing *Bennett v. Bennett*, 6 P.3d 724, 726 (Alaska 2000)).

**11.** 982 P.2d at 749 ("We ... will defer to the determinations of Congress and the Executive Branch on the question of tribal status. If Congress or the Executive Branch recognizes a group of Native Americans as a sovereign tribe, we 'must do the same.' " (citation omitted)).

issue and therefore our conclusion amounted to dictum, not a holding entitled to recognition under the doctrine of stare decisis. He alternatively contends our conclusion was "originally erroneous" and that we should overrule this aspect of *John v. Baker*.

In *John v. Baker* we recognized inherent tribal jurisdiction outside of Indian country, concurrent with state jurisdiction, to adjudicate certain child custody disputes involving tribal members.[12] We examined whether Alaska Native tribes are sovereign under federal law:[13] we observed that the Department issued a list of federally recognized tribes in 1993 including most Alaska Native villages and that the list's preamble expressed the Department's intention to "reaffirm the sovereign status of the recognized tribes."[14] The preamble stated that Alaska "villages and regional tribes listed ... have the same governmental status as other federally acknowledged Indian tribes by virtue of their status as Indian tribes with a government-to-government relationship with the United States."[15] We concluded that the Department viewed "recognized Alaska villages as sovereign entities."[16]

The Federally Recognized Indian Tribe List Act of 1994 (Tribe List Act) directs the Department to publish annual lists of tribes eligible for special programs and services because of their Indian tribe status.[17] We stated in *John v. Baker* that "for those who may have doubted the power of the [Department] to recognize sovereign political bodies, [the] 1994 act of Congress appears to lay

such doubts to rest."[18] We concluded that the "text and legislative history of the Tribe List Act demonstrate that Congress also views the recognized tribes as sovereign bodies,"[19] and it emphasizes that legislative history referring to the recognized tribes' "sovereignty," "quasi-sovereign status," and "government-to-government relationship [with] the United States ... as ... domestic dependent nation[s]."[20] We also noted that the Department continued publishing lists including Alaska Native villages pursuant to this congressionally delegated authority.[21] In deference to congressional and executive recognition that listed Alaska Native tribes are sovereign, we expressly recognized their sovereignty in *John v. Baker*.[22]

McCrary argues that *John v. Baker* should not be considered binding precedent because no party in that appeal argued against recognition of the sovereign status of Alaska Native tribes. He contends this legal issue was not tested by the adversarial process. But our conclusion regarding the Executive Branch's tribal recognition and Congress's approval through the Tribe List Act was carefully considered and adopted by the entire court.[23] Our conclusion in *John v. Baker* was not dictum—it was decisional and an essential foundation of the broader holding that Alaska Native tribes, by virtue of their sovereign powers, have concurrent tribal jurisdiction to adjudicate certain child custody disputes involving tribal members.[24]

Our precedent is not lightly set aside. We have repeatedly held "that a par-

**12.** 982 P.2d at 748–49, 759, 765; *see also State v. Native Vill. of Tanana*, 249 P.3d 734, 742–44 (Alaska 2011) (discussing *John v. Baker*).

**13.** *John v. Baker*, 982 P.2d at 748–50.

**14.** *Id.* at 749 (citing Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 58 Fed. Reg. 54,364, 54,368–69 (Oct. 21, 1993)).

**15.** *Id.* at 749–50 (emphasis omitted) (quoting 1993 list, 58 Fed. Reg. at 54,365–66).

**16.** *Id.* at 749.

**17.** *Id.* at 750 (citing 25 U.S.C. § 479a–1 (West Supp.1998)).

**18.** *Id.* (citing 25 U.S.C. § 479a *et seq.* (West Supp. 1998)).

**19.** *Id.*

**20.** *Id.*

**21.** *Id.*

**22.** *Id.* at 749–50.

**23.** *Id.; id.* at 776 n. 75 (Matthews, C.J., dissenting) ("In view of the 1993 recognition ... of the tribal status of Alaska's Native villages, the existence of their sovereignty is not in issue. They have the same sovereign powers as recognized tribes in other states." (citation omitted)).

**24.** *Id.* at 748–49, 759 (majority opinion); *see VECO, Inc. v. Rosebrock*, 970 P.2d 906, 922 (Alaska 1999) (concluding discussion in previous case "was necessary for our holding" and therefore not dictum); *Gonzales v. Krueger*, 799 P.2d 1318,

ty raising a claim controlled by an existing decision bears a heavy threshold burden of showing compelling reasons for reconsidering the prior ruling." [25] "We will overrule a prior decision only when clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent." [26] McCrary does not argue changed conditions and he has not shown that our previous decision was originally erroneous or that departure from this precedent would result in more good than harm. The U.S. District Court for the District of Alaska has held on multiple occasions that the Department has authority to recognize Alaska Native tribes. [27]

Federal courts of appeals have made similar statements. [28] Commentators also acknowledge the Department's authority to recognize tribes. [29]

If the Department or the courts have misconstrued congressional intent, Congress has had ample opportunity to clarify the Department's authority: the Department published its "preliminary list" of eligible Alaska Native tribes in 1982, [30] recognized Alaska Native tribes explicitly in the 1993 list, [31] and included Alaska Native tribes on each subsequent list. [32] Congress chose not to override those actions when it enacted the Tribe List Act, [33] but conversely overrode the Department's omission of one Alaska Indian tribe from the 1993 list. [34]

1322 (Alaska 1990) (Moore, J., concurring) (stating language in previous decision was not dictum because it was necessary to reach the conclusion).

25. *Guerrero ex rel. Guerrero v. Alaska Hous. Fin. Corp.*, 123 P.3d 966, 982 n. 104 (Alaska 2005) (citing *Thomas v. Anchorage Equal Rights Comm'n*, 102 P.3d 937, 943 (Alaska 2004)).

26. *Id.* (quoting *Thomas*, 102 P.3d at 943).

27. *Native Vill. of Tyonek v. Puckett*, No. A82–0369–CV, slip op. at 19–21, 29–30 (D.Alaska Oct. 29, 1996) (holding 1993 list recognized Native Village of Tyonek and that tribal status rendered Village immune from suit); *Native Vill. of Venetie I.R.A. Council v. Alaska*, Nos. F86–0075 Civ (HRH) & F87–0051 CIV (HRH), 1994 WL 730893, at *9–11 (D.Alaska Dec. 23, 1994) (holding Department had authority to acknowledge tribes and noting Tribe List Act bolstered this position because Congress chose to repudiate Secretary's decision to remove one Alaska tribe from 1993 list but did not repudiate any other portions of same list); *see also Native Vill. of Venetie I.R.A. Council v. Alaska*, No. F86–0075 Civ (HRH), slip op. at 9–10 (D.Alaska Sept. 20, 1995) (summarizing holding in previous *Venetie* order).

28. *Miami Nation of Indians of Indiana, Inc. v. U.S. Dep't of the Interior*, 255 F.3d 342, 345 (7th Cir.2001) (noting that "Congress has delegated to the executive branch the power of recognition of Indian tribes"); *W. Shoshone Bus. Council v. Babbitt*, 1 F.3d 1052, 1056–57 (10th Cir.1993) (relying on Department tribal recognition regulations to hold tribe's absence from Department's list was dispositive); *James v. U.S. Dep't of Health & Human Servs.*, 824 F.2d 1132, 1138 (D.C.Cir.1987) ("Congress has specifically authorized the Executive Branch to prescribe regulations concerning Indian affairs and relations. Regulations establishing procedures for federal

recognition of Indian tribes certainly come within the area of Indian affairs and relations.").

29. DAVID S. CASE & DAVID A. VOLUCK, ALASKA NATIVES AND AMERICAN LAWS 371 (2d. ed. 2002) ("The publication in 1993 of the Interior Department's list of federally recognized tribes, including some 227 Alaska tribes, and congressional ratification of the list a year later resolved any remaining question of Alaska Native tribal status."); COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 3.02[4], at 140 (Nell Jessup Newton ed., 2005 ed.) ("Congress has long delegated authority to the executive branch to take actions consistent with federal recognition of tribes. This delegation was the source of executive branch authority to adopt an administrative process for federal recognition, which was done in 1978." (citation omitted)); CONFERENCE OF W. ATTY'S GEN., AMERICAN INDIAN LAW DESKBOOK 63 (4th ed. 2008) ("Congress occasionally has acted to acknowledge tribes directly but, more importantly, has delegated to the Secretary of the Interior broad authority that encompasses promulgation of regulations setting forth criteria for federal acknowledgment." (citations omitted)).

30. 1982 list, 47 Fed.Reg. at 53,1331, 53,133–35.

31. 1993 list, 58 Fed.Reg. at 54,364–66 (noting in preamble list's purpose to eliminate doubt and unequivocally acknowledge Alaska Native tribes' governmental status).

32. *E.g.*, 2009 list, 74 Fed.Reg. at 40,222–23.

33. Federally Recognized Indian Tribe List Act of 1994, Pub.L. 103–454, 108 Stat. 4791, 4791–92 (codified at 25 U.S.C. § 479a–1 (2006)).

34. The Department's 1993 list did not include the Central Council of Tlingit and Haida Indian

We conclude McCrary has not sustained his heavy burden to demonstrate our precedent in *John v. Baker* should be overturned. Because Ivanof Bay is a federally recognized tribe, it is entitled to sovereign immunity. Ivanof Bay and Shangin, as its president, are immune from suit in state court.[35]

## V. CONCLUSION

We AFFIRM the superior court's dismissal of McCrary's suit based on sovereign immunity.[36]

Tribes of Alaska. In response, Congress passed the Tlingit and Haida Status Clarification Act, Pub.L. No. 103–454, 108 Stat. 4791 (Nov. 2, 1994) codified at 25 U.S.C. §§ 1212, 1213 (2006). In this Act, Congress expressly recognized the Central Council of Tlingit and Haida Indian Tribes of Alaska. Additionally, Congress noted that "[t]he Secretary does not have the authority to terminate the federally recognized status of an Indian tribe as determined by Congress...." Section 2, Pub.L. No. 103–454, 108 Stat. 4791 (Nov. 2, 1994). We do not believe Congress would expressly impugn the Secretary's authority to terminate congressionally recognized tribes, but fail to also disaffirm the Secretary's power to recognize tribal status. *See also Native Vill. of Venetie I.R.A. Council v. State of Alaska,* 1994 WL 730893, *10 (D.Alaska Dec. 23, 1994).

**35.** *See, e.g., Runyon,* 84 P.3d at 439 ("[T]ribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." (quoting *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978))).

**36.** We note the superior court based its dismissal on lack of subject matter jurisdiction. It is unclear whether a tribe's sovereign immunity is merely an affirmative defense or a bar to jurisdiction. *Compare Sea Hawk Seafoods, Inc. v. State,* 215 P.3d 333, 339 (Alaska 2009) (holding state sovereign immunity is an affirmative defense "that does not affect a court's subject-matter jurisdiction"), *with Kiowa Tribe of Okla. v. Mfg. Techs., Inc.,* 523 U.S. 751, 755–56, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998) ("We have often noted ... that the immunity possessed by Indian tribes is not coextensive with that of the States.") *and Puyallup Tribe, Inc. v. Dep't of Game of State of Wash.,* 433 U.S. 165, 172, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977) ("Absent an effective waiver or consent, it is settled that a state court may not exercise jurisdiction over a recognized Indian tribe."). But because Ivanof Bay properly raised sovereign immunity as a defense and we affirm on that ground, we do not need to decide whether dismissal for lack of subject matter jurisdiction was proper.