*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DOUGLAS INDIAN ASSOCIATION, | ) | |
| | ) | Supreme Court No. S-16235 |
| Appellant, | ) | |
| | ) | Superior Court No. 1JU-15-00625 CI |
| v. | ) | |
| | ) | O P I N I O N |
| CENTRAL COUNCIL OF TLINGIT | ) | |
| AND HAIDA INDIAN TRIBES OF | ) | No. 7198 – September 8, 2017 |
| ALASKA; RICHARD PETERSON, | ) | |
| individually and in his capacity as | ) | |
| President of the Central Council of Tlingit | ) | |
| and Haida Indian Tribes of Alaska; and | ) | |
| WILLIAM WARE, individually and in | ) | |
| his capacity as Tribal Transportation | ) | |
| Manager of the Central Council of Tlingit | ) | |
| and Haida Indian Tribes of Alaska, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Louis J. Menendez, Judge.

Appearances: Lael A. Harrison, Faulkner Banfield, P.C., Juneau, for Appellant. Richard D. Monkman and Kendri M. M. Cesar, Sonosky, Chambers, Sachse, Miller & Munson, LLP, Juneau, for Appellees. Nicholas Gasca, Tanana Chiefs Conference, Fairbanks, for Amicus Curiae Tanana Chiefs Conference.

Before: Stowers, Chief Justice, Winfree, Bolger, and Carney, Justices. [Maassen, Justice, not participating.]

BOLGER, Justice.

## I.   INTRODUCTION

Under the doctrine of tribal sovereign immunity, an Indian tribe is immune from suit unless Congress has authorized the suit or the tribe has waived its immunity. Relying on this doctrine, the superior court dismissed a complaint by Douglas Indian Association against Central Council of Tlingit and Haida Indian Tribes of Alaska and two Central Council officials. Douglas now argues that the superior court's action was premature because sovereign immunity is an affirmative defense that should be resolved following discovery. But the federal courts recognize that tribal sovereign immunity is a jurisdictional bar that may be asserted at any time, and we agree with this basic principle. Immunity is a core aspect of tribal sovereignty that deprives our courts of jurisdiction when properly asserted. We therefore affirm the superior court's order dismissing the complaint.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

Douglas alleges the following facts in its complaint. Both Douglas and Central Council are federally recognized Indian tribes located in Juneau. Between 2005 and 2012, both tribes were eligible to receive tribal transportation funds from the federal government. Central Council formed a consortium to administer these funds on behalf of individual tribes. Douglas accepted Central Council's invitation to join the consortium, and the two tribes signed a Memorandum of Agreement in August 2006.

Douglas attached the Agreement as an exhibit to its complaint. The Agreement provided that upon Douglas's withdrawal from the consortium, Douglas's

funds would be administered in accordance with the federal regulations that govern such withdrawals.[1] Both Douglas and Central Council also expressly reserved their sovereign immunity from suit.

According to Douglas's complaint, the consortium did not undertake any of Douglas's transportation projects or use any of Douglas's funds for Douglas's benefit. Central Council representatives told Douglas that the funds were maintained in a separate savings account and had not been expended. Douglas withdrew from the consortium in January 2012 and asked Central Council to remit Douglas's funds, but Central Council neither remitted the funds nor provided an accounting.

## B.     Proceedings

In April 2015 Douglas filed suit against Central Council and two of its tribal officials, President Richard Peterson and Tribal Transportation Manager William Ware, in their individual and official capacities. Douglas sought a declaration that Central Council owed a fiduciary duty to Douglas under a trust or agency theory and requested injunctive relief against the tribal officials "enjoining any action inconsistent with the court's declaratory judgment." Douglas also sought specific performance and damages from Central Council. Nowhere in its complaint did Douglas allege that Central Council had waived its sovereign immunity or Congress had abrogated it. Nor did Douglas make any allegations about Peterson and Ware other than to state their names and titles.

Central Council resisted Douglas's attempts to engage in discovery and filed a motion to dismiss for lack of subject matter jurisdiction under Alaska Civil

---

[1]     *See* 25 C.F.R. §§ 1000.32-.35, .253 (2017). The regulations provide a federal administrative process for resolving disputes between the consortium and a withdrawing tribe. 25 C.F.R. § 1000.34. These regulations do not provide for any abrogation or waiver of sovereign immunity.

Rule 12(b)(1), asserting tribal sovereign immunity. Douglas opposed the motion, arguing that sovereign immunity is an affirmative defense that can be raised only after discovery in an Alaska Civil Rule 56 motion for summary judgment, not a jurisdictional bar that can be raised via Rule 12(b)(1); that it was at least entitled to jurisdictional discovery; and that sovereign immunity did not protect the tribal officials from suit.

The superior court granted Central Council's motion to dismiss, and Douglas appeals. Tanana Chiefs Conference filed an amicus curiae brief in support of Central Council's position.

## III. STANDARD OF REVIEW

We review issues of sovereign immunity de novo.[2] We also "review de novo a superior court's decision to dismiss a complaint for lack of subject matter jurisdiction."[3] "In exercising our independent judgment, we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[4]

"We review the denial of a motion to compel discovery for abuse of discretion."[5] "An abuse of discretion occurs when [a decision] is 'arbitrary, capricious, manifestly unreasonable, or improperly motivated.' "[6]

---

[2]     *McCrary v. Ivanof Bay Vill.*, 265 P.3d 337, 339 (Alaska 2011).

[3]     *Healy Lake Vill. v. Mt. McKinley Bank*, 322 P.3d 866, 871 (Alaska 2014).

[4]     *Id*.

[5]     *Coulson v. Marsh & McLennan, Inc.*, 973 P.2d 1142, 1146 (Alaska 1999) (citing *Stone v. Int'l Marine Carriers, Inc.*, 918 P.2d 551, 554 (Alaska 1996)).

[6]     *Price v. Unisea, Inc.*, 289 P.3d 914, 918 (Alaska 2012) (quoting *Okagawa v. Yaple*, 234 P.3d 1278, 1280 (Alaska 2010)).

## IV. DISCUSSION

Douglas renews its arguments on appeal. First, Douglas argues that under Alaska law, tribal sovereign immunity, like state sovereign immunity, is an affirmative defense rather than a jurisdictional bar, meaning that it should be "raised in a Rule 56 motion for summary judgment after discovery" rather than a Rule 12(b)(1) motion to dismiss. Second, Douglas argues that even if tribal sovereign immunity is a jurisdictional bar, the superior court should have granted Douglas's request for jurisdictional discovery as to whether Central Council may have waived its sovereign immunity or whether the tribal officials may have acted *ultra vires*. Finally, Douglas argues that even if Central Council is protected by sovereign immunity, Douglas should still be permitted to sue Peterson and Ware, the two tribal officials, for declaratory and injunctive relief.

### A. Tribal Sovereign Immunity Is A Jurisdictional Bar.

The parties do not dispute that Central Council is a federally recognized tribe, that federally recognized tribes are entitled to tribal sovereign immunity, and that under federal law, tribal sovereign immunity may be raised prior to discovery in a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Their dispute is whether Alaska should follow this federal rule. For the reasons discussed below, we hold that under Alaska law, tribal sovereign immunity is a jurisdictional bar that may be invoked by a sovereign defendant in a Rule 12(b)(1) motion to dismiss.

Under the doctrine of tribal sovereign immunity, an Indian tribe is immune from suit unless Congress has authorized the suit or the tribe has waived its immunity.[7] This common law immunity is "[a]mong the core aspects of sovereignty" possessed by

---

[7] *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998).

tribes and "traditionally enjoyed by sovereign powers."[8] In *Michigan v. Bay Mills Indian Community*, the U.S. Supreme Court recently reaffirmed that it has "time and again treated the 'doctrine of tribal immunity [as] settled law' and dismissed any suit against a tribe absent congressional authorization (or a waiver)."[9]

"[T]ribal immunity 'is a matter of federal law and is not subject to diminution by the States.' "[10] We have long held that federally recognized tribes in Alaska are sovereign entities entitled to tribal sovereign immunity in Alaska state court.[11] We have explained that this immunity is "motivated in significant part by the need to ensure that tribal assets are used as the tribe wishes, without threat from litigation."[12] We have thus affirmed a superior court's dismissal of a suit against an Alaska Native village

---

[8] *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2030 (2014) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)).

[9] *Id.* at 2030-31 (alteration in original) (quoting *Kiowa*, 523 U.S. at 756).

[10] *Id.* at 2031 (quoting *Kiowa*, 523 U.S. at 756); *see also Atkinson v. Haldane*, 569 P.2d 151, 163 (Alaska 1977) ("Because of the supremacy of federal law, we are bound to recognize the doctrine of tribal sovereign immunity . . . .").

[11] *See Atkinson*, 569 P.2d at 162-63.

[12] *Runyon ex rel. B.R. v. Ass'n of Vill. Council Presidents*, 84 P.3d 437, 440 (Alaska 2004) (citing *Native Vill. of Stevens v. Alaska Mgmt. & Planning*, 757 P.2d 32, 41 n.24 (Alaska 1988); *Atkinson*, 569 P.2d at 160).

when the village appeared on the U.S. Department of the Interior's list of federally recognized tribes and raised tribal sovereign immunity as a defense.[13]

But we have deferred the question "whether a tribe's sovereign immunity is merely an affirmative defense or a bar to jurisdiction."[14] Although the U.S. Supreme Court has not addressed this question directly, many federal circuit courts have indicated that tribal sovereign immunity is properly invoked as a jurisdictional bar under the federal version[15] of Rule 12(b)(1).[16] Douglas nonetheless argues that Alaska should follow a different rule. Douglas asks us to treat tribal sovereign immunity as an

---

[13]    *McCrary v. Ivanof Bay Vill.*, 265 P.3d 337, 339, 342 (Alaska 2011). *See also John v. Baker*, 982 P.2d 738, 750 (Alaska 1999) (deferring to the federal government in recognizing the sovereignty of tribes who appear on the federal list); 25 U.S.C.A. §§ 5130, 5131 (West Supp. 2017) (authorizing annual publication of the list); Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs, 82 Fed. Reg. 4,915 (Jan. 17, 2017).

[14]    *McCrary*, 265 P.3d at 342 n.36 (citing *Sea Hawk Seafoods, Inc. v. State*, 215 P.3d 333, 339 (Alaska 2009); *Kiowa*, 523 U.S. at 755-56; *Puyallup Tribe, Inc. v. Dep't of Game of the State of Wash.*, 433 U.S. 165, 172 (1977)).

[15]    Under both the Alaska and federal rules of civil procedure, a party may assert the defense of lack of subject matter jurisdiction by motion before serving a responsive pleading. Alaska. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(1).

[16]    *See, e.g., Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1286-87 (11th Cir. 2015); *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015); *Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 919-20 (6th Cir. 2009)*; Miner Elec., Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1009 (10th Cir. 2007); *Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 78, 84 (2d Cir. 2001); *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043 (8th Cir. 2000). *But see Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818, 820 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 1331 (2017) (endorsing the district court's conversion of a tribe's Rule 12(b)(1) motion to dismiss for lack of jurisdiction to a Rule 12(b)(6) motion to dismiss for failure to state a claim because "the question of sovereign immunity is not jurisdictional").

affirmative defense "properly raised in a Rule 56 motion for summary judgment after discovery."[17]

Douglas relies primarily on our decision in *Sea Hawk Seafoods v. State*.[18] In *Sea Hawk Seafoods*, a fish processor sued the State of Alaska for fraudulent conveyance and conspiracy.[19]  After almost ten years of litigation, the State raised the defense of sovereign immunity.[20]  We rejected the State's argument that sovereign immunity was a jurisdictional bar and determined that "the State's claim of sovereign immunity is properly characterized as an affirmative defense."[21]  We explained that sovereign immunity is " 'an avoidance' under [Alaska] Civil Rule 8(c)" because, like an avoidance, "[s]overeign immunity . . . bars a person from bringing a claim against the State and plaintiffs are not required to show that they may sue the State in order to proceed with their claims."[22]  We concluded that the proper inquiry for determining if the

---

[17]     Douglas apparently suggests that an affirmative defense can be decided only after discovery.  This is inaccurate.  Affirmative defenses may be raised in a pre-answer motion under Civil Rule 12(b)(6) as long as the defense "clearly appear[s] on the face of the pleading."  *Martin v. Mears*, 602 P.2d 421, 428 (Alaska 1979) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 605-06 (1969 & Supp. 1979)).  We note that Central Council's immunity clearly appears on the face of Douglas's complaint, which states that "[t]he defendant Central Council . . . is a federally recognized Indian tribe" and does not allege that Congress has authorized Douglas's suit or that Central Council has waived its immunity.

[18]     215 P.3d 333 (Alaska 2009).

[19]     *Id.* at 334-35.

[20]     *Id.* at 334.

[21]     *Id.* at 338-39.

[22]     *Id.* (footnotes omitted).

State had waived its immunity was "whether the adverse party is prejudiced by the moving party's delay in raising the defense."[23]

Douglas argues that *Sea Hawk Seafoods* states a general rule of Alaska procedure that applies to all forms of sovereign immunity, including tribal sovereign immunity. We disagree. Douglas minimizes the "few, limited, distinctions between state and tribal sovereign immunity" as relating primarily to the states' participation in the Constitutional Convention. But Douglas ignores the specific situation in Alaska: Our state constitution expressly provides for suits against the State.[24] We cited this provision at the beginning of our discussion in *Sea Hawk Seafoods*, noting that criticism of sovereign immunity led some states to "consent[] to be sued under certain conditions."[25] We have thus stated that in claims against the State, "liability is the rule, immunity the exception,"[26] and we have placed the burden of showing a presumption of immunity on a state instrumentality wishing to invoke it.[27] Our statements describing the contours of Alaska's sovereign immunity under Alaska state law are informed by state constitutional

---

[23]    *Id.* at 340 (quoting *Pickle v. Bd. of Cty. Comm'rs of Cty. of Platte*, 764 P.2d 262, 264 (Wyo. 1988)).

[24]    Alaska Const. art. II, § 21 ("The legislature shall establish procedures for suits against the State.").

[25]    *Sea Hawk Seafoods*, 215 P.3d at 336-37 (citing *State v. ZIA, Inc.*, 556 P.2d 1257, 1260 (Alaska 1976)).

[26]    *Kinegak v. State, Dep't of Corr.*, 129 P.3d 887, 889 (Alaska 2006) (quoting *Native Vill. of Eklutna v. Alaska R.R. Corp.*, 87 P.3d 41, 49 (Alaska 2004)); *see also Sea Hawk Seafoods*, 215 P.3d at 337 ("Presently, the general rule in Alaska is that the government is liable for its wrongs.").

[27]    *Alaska R.R. Corp.*, 87 P.3d at 49.

underpinnings and policies that are not present when analyzing the federal doctrine of tribal sovereign immunity.

We instead take guidance from federal law and the Ninth Circuit's analysis in *Pistor v. Garcia*.[28] The *Pistor* court recognized that subject matter jurisdiction is traditionally understood to refer to "the courts' statutory or constitutional power to adjudicate the case."[29] When the court lacks subject matter jurisdiction, " 'the court must dismiss the complaint,' sua sponte if necessary."[30] "Sovereign immunity's 'quasi-jurisdictional . . . nature,' by contrast, means that '[i]t may be forfeited where the [sovereign] fails to assert it . . . .' "[31] But even though "sovereign immunity is not 'jurisdictional in the sense that it must be raised and decided by this Court on its own motion,' " it is jurisdictional "in the sense that it 'may be asserted at any time.' "[32]

---

[28]    791 F.3d 1104 (9th Cir. 2015).

[29]    *Id.* at 1110 (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010)).

[30]    *Id.* at 1111 (quoting *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012)); *see also* Alaska R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter the court shall dismiss the action.").

[31]    *Id.* (alterations in original) (quoting *In re Bliemeister*, 296 F.3d 858, 861 (9th Cir. 2002)).

[32]    *Id.* (first quoting *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 515 n.19 (1982); and then quoting *Mitchell v. Franchise Tax Bd.*, 209 F.3d 1111, 1117 (9th Cir. 2002)).  While a waiver of tribal sovereign immunity may not be implied, we observe that a tribe's litigation conduct may sometimes be construed as a waiver of immunity.  *See generally Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1017-18 (9th Cir. 2016) (comparing cases).  We interpret the Ninth Circuit to mean that the tribe may raise its immunity at any time, at which point the court would consider whether the tribe has "clearly and unequivocally expressed its intent to waive
(continued...)

"Although sovereign immunity is only quasi-jurisdictional in nature, Rule 12(b)(1) is still a proper vehicle for invoking sovereign immunity from suit."[33]

We find this analysis persuasive with respect to tribal sovereign immunity, as well as consistent with our precedent. Tribal sovereign immunity may be termed "quasi-jurisdictional" in Alaska because, as we have previously recognized, "subject matter jurisdiction is not waivable and can even be raised at a very late stage in the litigation,"[34] but "an Indian tribe may waive its sovereign immunity" from suit.[35] Nonetheless, when a tribal defendant invokes sovereign immunity in an appropriate manner and the tribe is entitled to such immunity, our courts "*may not exercise jurisdiction*."[36] Because tribal sovereign immunity serves as a jurisdictional bar under federal law, we follow the Ninth Circuit in concluding that a motion to dismiss under

---

[32]    (...continued)
its immunity from suit" based on its litigation conduct. *Id.* at 1017.

[33]    *Pistor,* 791 F.3d at 1111 (citations omitted).

[34]    *Hydaburg Coop. Ass'n v. Hydaburg Fisheries*, 925 P.2d 246, 249 (Alaska 1996).

[35]    *Native Vill. of Eyak v. GC Contractors*, 658 P.2d 756, 759 (Alaska 1983).

[36]    *Puyallup Tribe, Inc. v. Dep't of Game of the State of Wash.*, 433 U.S. 165, 172 (1977) (emphasis added). Applying a state affirmative defense rule to tribal sovereign immunity could also lead to a conflict with federal law when determining whether a tribe is entitled to immunity. *Compare Sea Hawk Seafoods, Inc. v. State*, 215 P.3d 333, 341 (Alaska 2009) (analysis "turns on whether the plaintiff is prejudiced by the [sovereign's] late assertion of the defense"), *with Bodi*, 832 F.3d at 1017 (question is "whether . . . the Tribe clearly and unequivocally expressed its intent to waive its immunity from suit").

Rule 12(b)(1) for lack of subject matter jurisdiction is "a proper vehicle for invoking sovereign immunity from suit."[37]

We respect Douglas's position as itself a tribal sovereign, which "believes that the transparency and accountability that come with providing discovery are consistent with the high standards it associates with sovereignty." But we are mindful of the concerns raised by amicus Tanana Chiefs Conference, representing rural tribes in interior Alaska, that "even 'limited' discovery could be financially ruinous for many tribes in [the Conference's] region" as funds are shifted from critical programs and rural village economies to urban lawyers in Anchorage, Fairbanks, or Juneau. We find the latter consideration more compelling given that "protecting tribal assets has long been held crucial to the advancement of the federal policies advanced by immunity."[38] And we observe that even with a jurisdictional bar, a tribe can still choose to waive its own immunity for transparency and accountability reasons or protect its interests when entering into a contract with another tribe by negotiating a waiver of the other tribe's immunity or some other procedure for resolving disputes.[39] But the "federal policies of tribal self determination, economic development, and cultural autonomy"[40] are better served by leaving these decisions up to the tribes. We hold that tribal sovereign

---

[37]    *Pistor*, 791 F.3d at 1111.

[38]    *Runyon ex rel. B.R. v. Ass'n of Vill. Council Presidents*, 84 P.3d 437, 440 (Alaska 2004).

[39]    For instance, Douglas seems to have access to an alternative federal administrative remedy pursuant to the Agreement. *See supra* note 1 and accompanying text.

[40]    *Runyon*, 84 P.3d at 440 (quoting *Am. Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe*, 780 F.2d 1374, 1378 (8th Cir. 1985)).

immunity is a jurisdictional bar properly raised in a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

> **B.** **The Superior Court Did Not Abuse Its Discretion By Denying Discovery To Douglas.**

Douglas argues that even if tribal sovereign immunity is a jurisdictional bar, the superior court erred by denying Douglas jurisdictional discovery on two issues: (1) whether Central Council may have waived its sovereign immunity and (2) whether the tribal officials may have acted *ultra vires*. We conclude that the superior court did not abuse its discretion by denying discovery to Douglas.

The superior court found that Douglas "presented no substantive evidence as to waiver" and "alleged no specific *ultra vires* actions or continued violation of federal law on the part of [the tribal officials]." These statements are supported by the record. Douglas did not allege any waiver in its complaint; in fact, Douglas attached the Agreement expressly reserving Central Council's immunity. Nor did Douglas allege any *ultra vires* actions on the part of Peterson and Ware.

In its opposition to the motion to dismiss, Douglas described several broad categories of documents "that *may* contain a waiver of sovereign immunity" (emphasis added), but although Douglas provided theories for how these documents *could* contain evidence of waiver, Douglas did not allege any facts to show why they would.[41] As to

---

[41] Douglas listed three types of documents: (1) Central Council's agreements and correspondence with the federal agencies who manage tribal transportation funds; (2) Central Council's internal resolutions regarding the consortium and these funds; and (3) Central Council's insurance coverage. But it is not clear, for instance, why a federal agency would negotiate a third-party waiver for Douglas when federal regulations already provide an administrative process for the disposition of funds after withdrawal, as referenced in the Agreement's termination clause. Nor is it clear why Central Council would pass a resolution waiving its immunity as to Douglas without informing Douglas,

(continued...)

the tribal officials, Douglas did not even offer theories; Douglas stated only that the issue is "intensely factual" without alleging any specific actions taken by the officials or any specific documents that would resolve "the question of whether [the tribal officials] acted inside or outside the scope of their authority from the tribe."

Douglas argues that much of its requested discovery "would have been produced in routine [Alaska Civil] Rule 26 initial disclosures," but this begs the question; Douglas was not entitled to Rule 26 disclosures until the court determined it had jurisdiction to order such disclosures. Jurisdictional discovery may be appropriate in some cases involving tribal sovereign immunity,[42] but the plaintiff must specifically indicate "what facts additional discovery could produce that would affect [the court's] jurisdictional analysis."[43] Here, Douglas indicated no facts beyond its conclusory assertions of possible waiver and possible *ultra vires* actions. The superior court did not abuse its discretion by denying discovery on these issues.

---

[41] (...continued)
or why insurance would have any bearing on immunity.

[42] *See, e.g.*, *Runyon*, 84 P.3d at 440-41 (describing factors used to determine whether an organization "is an arm of a tribe for sovereign immunity purposes").

[43] *Healy Lake Vill. v. Mt. McKinley Bank*, 322 P.3d 866, 872 n.21 (Alaska 2014) (alteration in original) (quoting *Cheyenne Arapaho Tribes of Okla. v. United States*, 558 F.3d 592, 596 (D.C. Cir. 2009)). *See also id.* at 872-73 (upholding superior court's denial of further discovery "[b]ecause none of the requested discovery would have led to information relevant to the jurisdictional analysis"); *Price v. Unisea, Inc.*, 289 P.3d 914, 923 (Alaska 2012) ("Since further discovery would not have changed the superior court's immunity analysis, it was properly denied by the superior court.").

**C. The Tribal Officials In This Case Are Protected From Suit By Sovereign Immunity.**

Finally, Douglas argues that even if Central Council is protected by tribal sovereign immunity, Peterson and Ware are not immune from suit. Douglas offers two theories: (1) the officials could be sued for injunctive relief under *Ex parte Young*,[44] and (2) Douglas could sue the officials based on their *ultra vires* actions without alleging specific actions in its complaint. The superior court rejected both theories, and we affirm the court's dismissal against Central Council and both officials.

**1. *Ex parte Young* does not apply to the officials in this case.**

Douglas first argues that the tribal officials can be sued for injunctive relief under the doctrine of *Ex parte Young*. Under that doctrine, "immunity does not extend to officials acting pursuant to an allegedly unconstitutional statute."[45] "Because, under *Ex parte Young*, a state officer who violates federal law or the federal constitution is presumed to be acting without the authority of the state, such suits are simply deemed not to be suits against the state, so they do not implicate a state's sovereign immunity."[46] "This doctrine has been extended to tribal officials sued in their official capacity such that 'tribal sovereign immunity does not bar a suit for prospective relief against tribal officers allegedly acting in violation of federal law.' "[47] "[T]he relevant inquiry is only

---

[44] 209 U.S. 123 (1908).

[45] *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1092 (9th Cir. 2007) (citing *Ex parte Young*, 209 U.S. at 155-56).

[46] *State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs. v. Native Vill. of Curyung*, 151 P.3d 388, 404 (Alaska 2006) (citing *Ex parte Young*, 209 U.S. at 159).

[47] *Vaughn*, 509 F.3d at 1092 (quoting *Burlington N. R.R. Co. v. Blackfeet Tribe*, 924 F.2d 899, 901 (9th Cir. 1991), *overruled on other grounds by Big Horn Cty.* (continued...)

whether [the plaintiff] has alleged an ongoing violation of federal law and seeks prospective relief."[48]

Douglas has not alleged an ongoing violation of federal law. Instead, Douglas argues that the doctrine of *Ex parte Young* should be extended to reach tribal officials who allegedly violate state law. But we do not reach this question because regardless of the answer, *Ex parte Young* cannot be used to obtain the remedy that Douglas seeks. Douglas requests injunctive relief ordering that the officials "neither take nor permit any action inconsistent" with the court's declaration that Central Council is Douglas's trustee or agent, but "*Ex parte Young* cannot be used to obtain . . . an order for specific performance of a . . . contract."[49] Given that tribal sovereign immunity is "not subject to diminution by the States,"[50] we decline to extend the doctrine of *Ex parte*

---

[47]     (...continued)
*Elec. Coop., Inc. v. Adams*, 219 F.3d 944, 953 (9th Cir. 2000)); *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59 (1978) (analogizing to *Ex parte Young* for support that a tribal official was "not protected by the tribe's immunity from suit").

[48]     *Vaughn*, 509 F.3d at 1092 (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645-46 (2002)).

[49]     *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 256-57 (2011) (citing *Edelman v. Jordan*, 415 U.S. 651, 666-67 (1974)); *see also* COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 7.05[1][a] (Nell Jessup Newton ed., 2012 & Supp. 2015) ("[A] suit seeking specific performance on a tribal contract cannot be maintained against a tribal official" because "the relief will run directly against the tribe itself." (citing *Tamiami Partners v. Miccosukee Tribe of Fla.*, 177 F.3d 1212, 1225-26 (11th Cir. 1999))).

[50]     *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2031 (2014).

*Young* to allow a suit to proceed against a tribal official based on what is essentially a contract claim merely because Douglas seeks declaratory and injunctive relief.[51]

### 2. Douglas has not alleged any *ultra vires* actions.

Douglas also argues that the tribal officials are not protected by the tribe's sovereign immunity because their actions were *ultra vires*, i.e. outside the scope of the officials' delegated authority. As the superior court recognized, an official acting "without any authority whatever" is not protected by sovereign immunity.[52] The court nonetheless rejected Douglas's *ultra vires* theory because Douglas "did not plead any set of facts or any allegation that [the tribal officials] acted outside their scope of authority."

Douglas argues that it satisfied Alaska's lenient notice pleading standards under Rule 8 and that "[u]*ltra vires* actions are not one of the matters required to be plead with specificity by [Alaska Civil Rule] 9." But Douglas's focus on pleading standards is misplaced. Central Council did not move to dismiss Douglas's complaint based on Douglas's failure to satisfy Alaska's pleading standards; that is, Central Council did not file a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief could be granted. Instead, as we explained earlier, Central Council properly filed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Once the issue of the superior court's jurisdiction was raised, the court was then required to determine whether

---

[51] *Cf. Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997) ("To interpret *Young* to permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer . . . would be to adhere to an empty formalism and to undermine the principle . . . that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction.").

[52] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) (quoting *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 697 (1982) (plurality opinion)).

it had subject matter jurisdiction before it could allow further litigation to proceed — regardless of whether the facts supporting jurisdiction were alleged in the complaint or established in other pleadings.[53]

The superior court properly conducted that analysis in this case. Central Council filed a motion challenging the court's jurisdiction, arguing that both Central Council and the tribal officials were protected by tribal sovereign immunity. Douglas was then given an opportunity to respond — to show why the court did, in fact, have subject matter jurisdiction. At this point in the litigation, Douglas should have made any legal arguments or factual allegations supporting the superior court's subject matter jurisdiction, such as facts supporting its theory that the tribal officials were acting outside the scope of their authority and were therefore not protected by Central Council's sovereign immunity. But as the superior court found, Douglas never "plead[ed] any set of facts or any allegation that [the tribal officials] acted outside their scope of authority." The superior court therefore concluded that it lacked jurisdiction to hear the claims against the tribal officials.

The superior court's conclusion was correct. If Douglas wanted to establish the court's subject matter jurisdiction based on an *ultra vires* theory of avoiding tribal sovereign immunity, it was required to assert the legal and factual bases for that argument in response to Central Council's motion to dismiss for lack of subject matter jurisdiction. Because Douglas failed to do so, we affirm the superior court's dismissal of Douglas's claims.

---

[53] *See* Alaska R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties . . . that the court lacks jurisdiction of the subject matter the court *shall* dismiss the action." (emphasis added)); *Healy Lake Vill. v. Mt. McKinley Bank*, 322 P.3d 866, 872-73, 878 (Alaska 2014) (affirming a superior court's dismissal based on Rule 12(b)(1) where the court reviewed "all the information relevant to the jurisdictional analysis" including "affidavits, memoranda, . . . and other documents").

## V.    CONCLUSION

For the reasons stated above, we AFFIRM the superior court's judgment dismissing the complaint.